**STERLING SMOKELESS COAL COMPANY, Petitioner,**

v.

**Tammy AKERS; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 97–1073.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1997.

Decided Dec. 17, 1997.

**ARGUED**: Mark Elliott Solomons, Arter & Hadden, Washington, DC, for Petitioner. G. Todd Houck, MOLER, Staton & Houck, Mullens, West Virginia, for Respondents. **ON BRIEF**: Laura Metcoff Klaus, Arter & Hadden, Washington, DC, for Petitioner.

Vacated and remanded by published opinion. Judge LUTTIG wrote the opinion, in which Judge RUSSELL and Senior Judge CAMPBELL joined.

## OPINION

LUTTIG, Circuit Judge:

Petitioner appeals from a decision of the Benefits Review Board affirming an ALJ's award of survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* Because the ALJ failed to consider relevant and material evidence, we vacate and remand the case for further proceedings.

### I.

Respondent William E. Akers was laid off by petitioner Sterling Smokeless in 1982. In April 1984, two years after his employment with Sterling terminated, Akers filed a request for benefits under the Black Lung Benefits Act (the "Act"). On March 14, 1985, the Department of Labor denied Akers' claim for benefits, and Akers requested a hearing before an administrative law judge. Akers subsequently refused to attend several medical examinations scheduled by Sterling, and he ultimately failed to appear at his hearing before the ALJ. Akers then failed to respond to the ALJ's order to show cause why his benefits claim should not be dismissed, and eventually the ALJ dismissed Akers' claim as abandoned on December 22, 1988.

On October 21, 1992, Akers died at the age of 60. His death certificate recited that the immediate cause of death was respiratory failure due to extensive lung cancer. J.A. at 15. Although the evidence in the record before us is somewhat unclear, Akers admitted that he smoked regularly; Sterling contends that Akers smoked between half a pack and a pack of cigarettes every day for thirty to forty years before his death.

The claimant, respondent Tammy E. Akers, married William Akers in 1988, four and a half years prior to his death. She has not remarried since her husband's death. On January 11, 1993, Mrs. Akers filed a claim under the Act for survivors benefits. On May 24, 1993, a Department of Labor claims examiner denied Mrs. Akers' claim on the ground that she could not establish that Mr. Akers' pneumoconiosis—if it existed at all—caused or contributed to his death.

Claimant's request for benefits was then forwarded to the Office of Administrative Law Judges, and an ALJ conducted a benefits hearing on October 7, 1994. On January 4, 1995, the ALJ issued a decision and order awarding the claimant's request for survivor's benefits under the Act. The Benefits Review Board subsequently affirmed and Sterling thereafter petitioned this court for judicial review of the agency's award.

### II.

■ Before we can determine whether substantial evidence supports an administrative determination, we must "first ascertain whether the [the agency] has discharged [its] duty to consider all relevant evidence." *Jordan v. Califano,* 582 F.2d 1333, 1335 (4th Cir.1978). As we explained in *Arnold v. Secretary, Health Education & Welfare,* "[u]nless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdi-

cation of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." 567 F.2d 258, 259 (4th Cir.1977) (citation and internal quotation marks omitted). Here, it is clear that, because of two distinct but similar errors of law, the ALJ, and the Board in affirming the ALJ's decision, failed to consider all of the relevant and material evidence bearing on claimant's entitlement to benefits under the Black Lung Benefits Act, and thus a remand for further proceedings is necessary.

Under the Black Lung Benefits Act and implementing regulations applicable to Mrs. Akers' claim, a claimant may establish through any of the following four methods that a miner contracted pneumoconiosis: (1) chest x-ray readings; (2) biopsy or autopsy; (3) presumptions contained in 20 C.F.R. §§ 718.304, 718.305 or 718.306, which are inapplicable here; or (4) a physician's "reasoned medical opinion." 20 C.F.R. § 718.202(a). In its written decision, and as a statutory prerequisite to its award of benefits, the ALJ concluded (1) that Mr. Akers had pneumoconiosis, and (2) that his death was caused by pneumoconiosis in that pneumoconiosis was "a substantial contributing cause or factor leading to his death." 20 C.F.R. § 718.205(c). In reaching these conclusions, the ALJ was unable to rely upon x-ray evidence, autopsy, or biopsy evidence. Between 1984 and 1994, 22 different x-rays of Akers were taken and read by different doctors. J.A. at 12. Of those, only one reading of one x-ray, which was taken in August 15, 1984, indicated that Akers had pneumoconiosis. That positive reading was by Dr. Daniel, who is neither a B-reader[1] nor a board certified physician. The other twenty-one x-ray readings, performed by Breaders and board certified physicians, all concluded that Akers did not have pneumoconiosis. J.A. at 12–13.

The ALJ also refused to infer pneumoconiosis on the basis of autopsy or biopsy evidence because no autopsy was performed upon the miner's corpse, a lung biopsy performed in 1992 showed no pneumoconiosis, and a CT scan of the miner's chest, which was taken in 1992 and reviewed by three different doctors, failed to establish that Mr. Akers had contracted black lung disease. J.A. at 14.

■ Rather, in reaching its conclusions, the ALJ relied instead upon two categorical presumptions, both of which we have previously held are impermissible. First, the ALJ concluded that Mr. Akers had pneumoconiosis solely because more doctors opined that Akers had pneumoconiosis than opined that he did not. As the ALJ stated in his only sentence of reasoning in this regard, "as the numerical weight of the evidence is in the Claimant's favor, I find that she has established the existence of pneumoconiosis in the miner by medical opinion evidence pursuant to Section 718.202(a)(4)." J.A. at 16. In *Adkins v. Director, OWCP,* we reversed an ALJ's decision because the ALJ had invoked a "later evidence is better" rule in denying the claimant benefits. 958 F.2d 49 (4th Cir. 1992). There, the ALJ had credited two x-ray readings performed by less qualified physicians over a less recent positive x-ray reading performed by a more qualified physician. We rejected the ALJ's categorical presumption and held that an ALJ may not ignore the relative qualifications of competing physicians in conducting its review. We wrote that,

> [r]esolving the conflict [between the opinions of the two sets of physicians] requires counting heads (i.e., any two opinions are better than one) or looking to qualifications. The first course is as hollow as "later is better"; the second is prescribed by the regulations.

*Id.* at 52. *Accord Sahara Coal Co. v. Fitts,* 39 F.3d 781 (7th Cir.1994) (vacating and remanding decision of the Benefits Review Board that appeared to be based upon a numerical count of experts on each side of issue whether claimant had pneumoconiosis).

---

1. A "B" reader is a doctor who has demonstrated proficiency in interpreting x-rays for the presence or absence of pneumoconiosis by passing an examination given by the Appalachian Laboratory for Occupational Safety and Health. *See* 42 C.F.R. § 37.51(b)(2); 20 C.F.R. § 718.202(a)(ii)(E).

By resolving the conflict of medical opinion solely on the basis of the number of physicians supporting the respective parties, the ALJ below committed a similar error to that committed by the ALJ in *Adkins.* The ALJ not only ignored entirely the evidence of those physicians who concluded that Akers did not have pneumoconiosis, but it also uncritically accepted medical evidence of dubious or indeterminable value. For example, the ALJ ignored evidence that one of the physicians who diagnosed Akers with pneumoconiosis, Dr. Daniel, reached his conclusion on the basis of a discredited x-ray examination. And the ALJ similarly ignored the dispute as to whether two other physicians who had indicated that Akers had pneumoconiosis, Drs. Bembalkar and Hamdan, performed any sufficient independent testing upon the miner or whether they simply reiterated the miner's own statement to them that he had a history of pneumoconiosis.

■ Second, in concluding that the claimant had shown that pneumoconiosis contributed to Akers' death, the ALJ mechanistically credited, to the exclusion of all other testimony, the testimony from two physicians who had examined or treated Akers for only a month, even in the face of allegations that the two treating physicians did not perform any independent evaluation of the miner's condition but simply reiterated the miner's undocumented statement to them that he suffered from pneumoconiosis. In *Grizzle v. Pickands Mather and Co.,* 994 F.2d 1093 (4th Cir.1993), we observed "that as a general matter the opinions of treating and examining physicians deserve especial con sideration," but we explained that "[n]either this circuit nor the Benefits Review Board has ever fashioned either a *requirement* or a *presumption* that treating or examining physicians' opinions be given greater weight than opinions of other expert physicians." *Id.* at 1097 (emphasis added). *Accord Amax Coal Co. v. Beasley,* 957 F.2d

324, 327 (7th Cir.1992) ("ALJs cannot afford more weight to an examining physician's opinion *solely* because that doctor personally treated the claimant"); *Peabody Coal Co. v. Helms,* 901 F.2d 571, 573 (7th Cir.1990) ("[i]f the treating physician is not a specialist in black lung disease but the consultant is, and if a judgment of disability depends to a great extent on the expert interpretation of documentary data, such as x-rays and the results of gas and ventilatory tests, then reason may require that the consultant's opinion be given equal or even greater weight than the treating physician's."). The ALJ here indulged the very presumption that we cautioned against in *Grizzle.*

In crediting the testimony of Dr. Bembalkar and Dr. Hamdan over the testimony of all other doctors for no reason except that the two physicians treated Mr. Akers, the ALJ ignored entirely the opinion of Dr. Gaziano who, based upon his review of Mr. Akers' records, opined that Mr. Akers died of progressive lung cancer and not pneumoconiosis. J.A. at 16. The ALJ also ignored the medical opinion of Dr. Kleinerman who reviewed the miner's medical records on August 8, 1994, and opined that the miner did not have black lung disease, and that even if he did, it was not a cause of his death. Indeed, in reaching its conclusion, the ALJ ignored entirely the qualifications of the respective physicians, the explanation of their medical opinions, the documentation underlying their medical judgments, and the sophistication and bases of their diagnoses. And this, in spite of the impeccable credentials of one of the physicians who testified that Akers' pneumoconiosis could not have contributed toward his death,[2] and against the backdrop of allegations that the only two doctors who indicated that pneumoconiosis contributed to the miner's death did not perform any independent testing.

Because, contrary to our circuit precedent, the ALJ relied upon a "head count" of the

---

2. Dr. Kleinerman testified that Akers did not have pneumoconiosis, and that, even assuming that he did, such pneumoconiosis could not have contributed to his death. Dr. Kleinerman is a distinguished and board certified pathologist with a specialty in pulmonary pathology, and at the time that he rendered his opinion he was a

professor of pathology at Case Western Reserve Medical School, a member of the Mine Health Research Advisory Committee of the National Institute of Occupational Safety and Health, a member of the American College of Radiology Task Force on Pneumoconiosis, and had written hundreds of articles on lung pathology.

testifying physicians and invoked a rule of absolute deference to treating and examining physicians that relieved the ALJ of its statutory obligation to consider all of the relevant evidence bearing upon the existence of pneumoconiosis and its contribution to the miner's death, the judgment of the Benefits Review Board is vacated and the case is remanded for further consideration consistent with this decision.

*VACATED AND REMANDED*