**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PEABODY COAL COMPANY,
<u>Petitioner,</u>

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED

STATES DEPARTMENT OF LABOR;
LILLIE M. WOODALL, Executrix for
the Estate of Woodrow Woodall,
deceased,
<u>Respondents.</u>

No. 98-2469

On Petition for Review of an Order
of the Benefits Review Board.
(97-1352-BLA)

Argued: June 11, 1999

Decided: November 10, 1999

Before MURNAGHAN and TRAXLER, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Laura Metcoff Klaus, ARTER & HADDEN, L.L.P.,
Washington, D.C., for Petitioner. George A. Mills, III, Huntington,
West Virginia, for Respondents. **ON BRIEF:** Mark E. Solomons,
ARTER & HADDEN, L.L.P., Washington, D.C., for Petitioner.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Woodrow Woodall filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 as amended (1988). The Administrative Law Judge (ALJ) issued an order awarding benefits, and the Benefits Review Board affirmed. After the Board denied Peabody Coal's request for reconsideration, Peabody petitioned this court for review of the Board's order. We vacate the order and remand the case for findings that comply with the Act.

I

Woodall began his coal mine employment in 1969 at the age of 48. He established that he worked in a coal mine 17 years between 1969 and 1988. Woodall smoked two packs of cigarettes a day for forty years. He filed his first claim for benefits on October 19, 1983. On March 21, 1985, the Department of Labor (DOL) denied his claim because he failed to establish the necessary elements of entitlement. Although a medical evaluation disclosed severe chronic obstructive pulmonary disease, it did not reveal occupational lung disease. Woodall did not appeal; instead, he continued his employment until he retired at the age of 67. The West Virginia Compensation Board granted him a 60% disability award for pulmonary impairment based on a finding of pneumoconiosis.

After he retired, Woodall filed a new claim. According to the regulations, a second claim is automatically denied on the basis of the first denial unless the deputy commissioner determines that there has been a material change in conditions. See 20 C.F.R. § 725.309(c). Once Woodall established that there had been a material change, Peabody requested a hearing before an ALJ.

Applying the applicable Fourth Circuit precedent for duplicate claims found in Lisa Lee Mines v. Director, 86 F.3d 1358 (4th Cir.

2

1996) (en banc), the ALJ found that there had been a material change of conditions, and he determined that pneumoconiosis was present. The ALJ based this finding primarily on the biopsy evidence in the record. The ALJ found that the pneumoconiosis caused total disability. He reached these conclusions after considering the conflicting opinions of five doctors. The medical opinion evidence was not unanimous about whether Woodall had pneumoconiosis and--if it did exist--whether it caused disability.

Dr. Ranavaya examined Woodall in 1995. He relied on a positive x-ray and Woodall's work history to diagnose pneumoconiosis. Dr. Ranavaya determined that the pneumoconiosis contributed to Woodall's disability "to a major extent." Later that same year, Woodall was examined by Dr. Zaldivar. Dr. Zaldivar, a board-certified specialist in pulmonary disease, found no evidence of pneumoconiosis on a chest x-ray. Instead, he diagnosed severe emphysema manifested as bullous disease of the lung and attributed the disability exclusively to Woodall's cigarette smoking.

Dr. Fino reviewed the reports of Dr. Ranavaya, Dr. Zaldivar, and Dr. Thavaradhava, who had examined Woodall in 1983 in conjunction with his initial claim. Dr. Fino is a board-certified specialist in internal medicine and pulmonary disease and a B-reader. He agreed with Dr. Zaldivar that the x-rays showed no evidence of pneumoconiosis. Dr. Fino also agreed that Woodall's severe respiratory impairment was due exclusively to cigarette smoking.

Dr. Tweel examined Woodall on May 15, 1995; he noted that the bullous in the lower left lung was expanding and recommended a bullectomy. On October 11, 1995, Dr. Tweel referred Woodall to Dr. Jeffrey George for evaluation of his pulmonary status. Dr. George determined that Woodall needed surgery and performed a left thoracotomy and resection of multiple emphysematous blebs of the lower left lobe on October 11, 1995. Woodall was discharged on October 18, 1995. The final diagnosis was severe emphysematous pulmonary disease with bullae, postop atrial fibrillation and flutter, treated and resolved, and history of chronic tobacco use in the past.

Dr. Kleinerman, who is board certified in anatomical and clinical pathology, examined Woodall's medical record, including the reports

3

made by all the other doctors who had previously examined Woodall, and histologic slides from the lung resection. Dr. Kleinerman found that Woodall had a mild degree of simple pneumoconiosis; there was no evidence of nodular silicosis or complicated pneumoconiosis. The simple pneumoconiosis was not sufficient to cause the obstructive airways disease and arterial hypoxemia which Woodall suffered. Emphysema was the source of Woodall's ventilatory dysfunction, caused by prolonged and extensive cigarette smoking.

At the conclusion of his report Dr. Kleinerman noted that his opinion differed from other doctors due to the fact that his opinion was "based on direct microscopic examination of the lung tissue while other physicians made their diagnosis from chest x-rays or reports." J.A. at 71. In addition, Dr. Kleinerman explained that the "extensive dissolution of the lung tissue resulting from the severe emphysema" may have "masked evidence of the simple coalworkers' pneumoconiosis observed by x-ray." Id. The ALJ awarded benefits.

Peabody appealed the decision to the Benefits Review Board. The Board affirmed the ALJ's decision, and Peabody filed a motion for reconsideration and request for briefing order with the Benefits Review Board. On August 10, 1998, the Board denied Peabody's motion and declared the briefing order moot. Citing the Code of Federal Regulations, the Board determined that Peabody's motion for reconsideration did not state "supporting rationale for the request." J.A. at 25; 20 C.F.R. § 802.408(a). Additionally, the Board stated that a briefing order would only serve to delay the resolution of the case unnecessarily.

Peabody then appealed to this court. Woodall died on December 4, 1998, while Peabody's appeal was pending, and the district court substituted Lillie M. Woodall, executrix of his estate.

II

Pursuant to the Longshore and Harbor Workers' Compensation Act this court has jurisdiction to review appeals from final orders of the Board. See 33 U.S.C. § 921(c). The Board applies a substantial evidence standard of review to the findings of fact made by the ALJ. See Dehue Coal Co. v. Ballard, 65 F.3d 1189, 1193 (4th Cir. 1995). When

4

this court reviews a decision of the Board, we "undertake an independent review of the record" to determine whether the ALJ's findings of fact were supported by substantial evidence found in the record. Id.; see Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). There must be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," in order to satisfy this standard. Consolidated Edison Co. v. NLRB , 305 U.S. 197, 229 (1938).

Before we can determine whether the ALJ's decision is supported by substantial evidence, we must first determine whether the ALJ properly considered all the relevant evidence. See Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997). In order for this court to find the decision was supported by substantial evidence, the ALJ must have analyzed all the evidence and explained the weight he gave probative exhibits. See id. We review legal conclusions made by both the Board and the ALJ de novo. See Dehue , 65 F.3d at 1193.

III

In order to establish eligibility for benefits under the Act, Woodall must prove that he suffered from pneumoconiosis that arose, at least in part, out of coal mine employment. See 20 C.F.R. § 718.203(a). Also, "[t]o be entitled to benefits, a claimant must prove by a preponderance of the evidence that his pneumoconiosis was at least a contributing cause of his totally disabling respiratory impairment." Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990).

There are four methods that can be used to establish the existence of pneumoconiosis under the regulations: (1) chest x-rays; (2) biopsy or autopsy; (3) presumptions described in 20 C.F.R.§ 202(a)(3); (4) a physician's finding based on objective medical evidence supported by reasoned medical opinion. See 20 C.F.R.§ 718.202(a). Because he was not eligible for the presumptions mentioned in§ 718.202(a)(3), Woodall had to establish his claim via one of the other methods. The ALJ determined that the x-ray evidence failed to establish the existence of pneumoconiosis by a preponderance of the evidence. Of the 30 interpretations of 11 x-rays contained in the record, only 2 are positive for the presence of pneumoconiosis, while 28 are negative. None

5

of the ten interpretations submitted by qualified physicians were positive.

The biopsy evidence proved determinative. Woodall was able to establish the existence of pneumoconiosis by biopsy. In 1997, Dr. Kleinerman examined the lung tissue removed during Woodall's thoracotomy in October of 1995 and found that the tissue contained evidence of mild pneumoconiosis. However, Dr. Kleinerman also concluded that emphysema, not the mild pneumoconiosis, was responsible for Woodall's disabling respiratory condition. The ALJ based his finding that pneumoconiosis existed on the biopsy evidence determining that Woodall had established one element of entitlement.

Whether Woodall can establish full entitlement hinges on causation. At issue in this case is the ALJ's analysis of the evidence-- specifically, whether he properly considered Dr. Ranavaya's medical opinion. The ALJ stated that he accorded more weight to the medical opinion of Dr. Ranavaya "because he examined[Woodall]" and considered his medical history and symptoms. He continued "[a]lthough Dr. Kleinerman appears to have superior medical credentials . . . he did not have the opportunity to observe [Woodall], as did Dr. Ranavaya." J.A. at 16. The deciding factor in the ALJ's analysis of the conflicting evidence was the fact that Dr. Ranavaya examined Woodall. The Board noted in its opinion and order that the ALJ reasonably accorded Dr. Kleinerman's opinion less weight because he did not examine Woodall.

Peabody objects to the ALJ's decision in light of this court's reasoning articulated in Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438 (4th Cir. 1997), and Milburn Colliery Co. v. Hicks, 138 F.3d 524 (4th Cir. 1998). A doctor's medical opinion does not command deference simply because the doctor personally examined the claimant. Akers, 131 F.3d at 441. An ALJ has a statutory obligation to "consider all of the relevant evidence bearing upon the existence of pneumoconiosis and its contribution to the miner's death." Id. at 441-42. Part and parcel of considering all relevant evidence is noting the comparative credentials of the physicians. See Hicks , 138 F.3d at 536. Qualifications of expert witnesses can buttress the reliability of their opinions. See id.

6

The ALJ adopted Dr. Kleinerman's conclusions only to the extent that they support Dr. Ranavaya's opinion. Dr. Ranavaya's opinion was based primarily on the same x-ray evidence that the ALJ found did not establish the existence of pneumoconiosis. Additionally, the ALJ credited Dr. Ranavaya's opinion to the exclusion of Dr. Fino's and Dr. Zaldivar's, both of whom found that the x-ray evidence did not warrant a diagnosis of pneumoconiosis.

The ALJ erred by deferring to the examining physician. Dr. Ranavaya's medical opinion is not only inconsistent with Dr. Kleinerman's opinion; it is inconsistent with the findings made by the ALJ. Specifically, Dr. Ranavaya found a length of work experience longer than that determined by the ALJ, and he found the x-rays, which the ALJ determined did not demonstrate the existence of pneumoconiosis, to be positive.

In light of this court's prohibition against a rule of deference toward examining physicians enunciated in Akers and Hicks, the judgment of the Benefits Review Board is vacated, and the case is remanded for further consideration. The ALJ may reopen the proceedings for receipt of additional evidence.

VACATED AND REMANDED

7