UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WESTMORELAND COAL COMPANY,
INCORPORATED,

*Petitioner,*

v.

ORVILLE BRADLEY; DIRECTOR, OFFICE
OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

*Respondents.*

No. 00-1192

On Petition for Review of an Order
of the Benefits Review Board.
(98-1188-BLA)

Argued: December 8, 2000

Decided: January 19, 2001

Before NIEMEYER and MOTZ, Circuit Judges, and
James C. CACHERIS, Senior United States District Judge
for the Eastern District of Virginia, sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C.,
Charleston, West Virginia, for Petitioner. Roger Daniel Forman,
FORMAN & CRANE, Charleston, West Virginia, for Respondents.

**ON BRIEF:** Mary Rich Maloy, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Petitioner. Robert Lee White, Madison, West Virginia, for Respondent Bradley.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This appeal constitutes Orville Bradley's third application for benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 (1994). He filed unsuccessfully in 1971 and again in 1978. Bradley was employed in the coal industry for most of his adult life. From 1969 to 1971, he worked as a section foreman for Westmoreland Coal Company, but he last worked in the coal mining industry as a mine inspector with the West Virginia Department of Mines, from 1971 to 1985.

This claim, initiated in 1991, was first denied by the District Director and then by an Administrative Law Judge ("ALJ"). Upon review, however, the Benefits Review Board ("BRB") vacated that decision and remanded for further proceedings. Because the previous ALJ had left his position, a new ALJ heard the claim and evaluated the evidence de novo. After a hearing, the ALJ concluded that Bradley suffers from pneumoconiosis, which is a contributing cause to his totally disabling respiratory condition. Accordingly, the ALJ granted benefits to Bradley. The BRB upheld this ruling, and Westmoreland now appeals. For the reasons set forth below, we vacate and remand for further proceedings.

### I.

"In order to obtain federal black lung benefits, a claimant must prove by a preponderance of the evidence that: '(1) he has pneumoco-

niosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability.'" *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207 (4th Cir. 2000) (quoting *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998)). The first, third, and fourth elements are at issue in this case.

Claimant can establish the existence of pneumoconiosis through chest x-ray, biopsy, or medical opinion evidence. 20 C.F.R. § 718.202(a) (2000).[1] In this case, no biopsy evidence was available, but the ALJ considered sixty x-ray readings and nine medical opinions in concluding that Bradley suffers from pneumoconiosis.

Addressing the x-ray evidence by itself, the ALJ found that:

> [A] preponderance of the most expert physicians found the x-ray evidence to be negative for pneumonconiosis. Addi-

---

[1]20 C.F.R. § 718.202 provides:

(a) A finding of the existence of pneumoconiosis may be made as follows:

(1) A chest X-ray . . . may form the basis for a finding of the existence of pneumoconiosis . . .

. . . .

(2) A biopsy or autopsy . . . may be the basis for a finding of the existence of pneumoconiosis. . . .

(3) If the presumptions described in [the regulations] are applicable, it shall be presumed that the miner is or was suffering from pneumoconiosis.

(4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis. . . . Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

tionally, an overwhelming preponderance of all physicians found the x-rays to be negative as well. Accordingly, I find that Claimant has failed to establish with chest x-ray evidence that he has pneumoconiosis.

Finding that Bradley failed to establish pneumoconiosis through x-ray evidence under § 718.202(a)(1), the ALJ turned to the nine medical opinions pursuant to § 718.202(a)(4).

Drs. Ralph J. Jones and W. G. Hayes, whose qualifications are not contained in the record, examined Bradley in 1976 and found no evidence of pneumoconiosis and provided no assessment of pulmonary impairment or causation. The ALJ gave these opinions limited weight because these doctors were not familiar with Bradley's current condition; therefore their conclusion that no pneumoconiosis was present in 1976 provided little insight into his condition now. In addition, the ALJ found their reports cursory and poorly reasoned.

Drs. Thomas M. Jarboe, Robert G. Loudon, and James R. Castle, all board-certified physicians, did not personally examine Bradley. However, upon review of a myriad of medical records and test results, they determined that Bradley did not suffer from pneumoconiosis. Rather, they concluded, Bradley's mild to moderate respiratory impairment was caused by cigarette smoking, asthma, or a combination of both. The ALJ gave their opinions less weight because they were not based on personal examinations.

Dr. George L. Zaldivar, a board-certified physician, examined Bradley three times between 1992 and 1997. The doctor found some pulmonary impairment, but concluded that Bradley did not suffer from pneumoconiosis. Instead, Dr. Zaldivar determined that Bradley's mild to moderate impairment was caused by emphysema from a 45-year smoking habit, asthma, and a history of gastro-esophageal reflux, which he linked to Bradley's respiratory problems. In addition, the doctor found that Bradley's impairment was not totally disabling. The ALJ gave Dr. Zaldivar's opinion "no weight," because he did not find the doctor credible. The ALJ stated that the gastro-esophageal reflux explanation "strains the bounds of credibility" and did not believe Dr. Zaldivar's asthma determination because the doctor did not mention it until his third report.

By contrast to the six doctors above, Drs. C. J. Lesaca and J. C. Carbonel,[2] whose qualifications are not in the record, found evidence of pneumoconiosis after examining Bradley in 1978 and 1979 respectively. They determined that Bradley was totally disabled, but never specifically addressed Bradley's degree of pulmonary impairment and did not opine regarding the cause of the disability. Because these doctors' opinions were outdated, the ALJ gave them little weight. However, he gave them more weight than the twenty year old opinions of Drs. Jones and Hayes, because Drs. Lesaca and Carbonel found pneumoconiosis "which is irreversible, and once a miner acquires pneumoconiosis it will continue over time." Thus, according to the ALJ, the lapse of twenty years was less likely to change the opinions of Drs. Jones and Hayes than it was to change the minds of Drs. Lesaca and Carbonel.

Finally, Dr. Donald L. Rasmussen, whose qualifications are not in the record, concluded that Bradley suffered from pneumoconiosis. This opinion was based on a 1991 physical exam, numerous tests, and an x-ray reading that was positive for pneumoconiosis. Although Dr. Rasmussen received two negative x-ray readings shortly after the exam, he stated that those readings did not change his opinion because coal dust damage "may well occur to a coal miner without producing x-ray evidence of the pneumoconiosis which he may very well have." The ALJ gave Dr. Rasmussen's report the "greatest weight." He found the doctor's opinion well-reasoned and that Dr. Rasmussen considered and rejected causes other than pneumoconiosis for Bradley's symptoms, explained that negative x-rays would not change his mind, conducted a thorough examination, and obtained objective testing.

Relying most heavily on Dr. Rasmussen's opinion, the ALJ concluded that Bradley suffered from pneumoconiosis, was totally disabled, and the pneumoconiosis was a contributing cause to his total disability and accordingly awarded Bradley benefits. Westmoreland challenges each of these findings. For the reasons that follow, we believe that the ALJ erred in several respects.

---

[2]Because of legibility problems, the ALJ referred to this doctor as "Caitnier," but it appears from the record and the BRB's decision that his true name is Carbonel.

## II.

First, the ALJ acted contrary to this Court's recent holding that the proper method for determining the existence of pneumoconiosis under § 718.202(a) is to "weigh the different types of evidence together to determine whether a preponderance of *all* of the evidence establishes the existence of pneumoconiosis." *Compton*, 211 F.3d at 208. It is clear from the record that in this case the ALJ weighed the x-ray evidence separately from the medical opinion evidence. Indeed, the ALJ found that "while the chest x-ray evidence is negative, the physician opinion evidence establishes that Claimant has pneumoconiosis."[3] The ALJ improperly isolated one type of evidence from another; on remand, he must consider all available evidence as a whole.

Specifically, the ALJ must evaluate Dr. Rasmussen's medical opinion in light of the fact that fifty-four out of sixty x-ray readings were negative. In addition, only seven of the physicians that read Bradley's x-rays were both highly qualified board-certified radiologists and B-Readers; and six of those agreed that the x-rays were negative for pneumoconiosis. Moreover, almost thirty negative readings, all by these six certified readers, occurred after Dr. Rasmussen issued his report. Thus, his diagnosis was made without benefit of this evidence.[4] By failing to look at Dr. Rasmussen's medical opinion in conjunction with a good deal of additional x-ray evidence, the ALJ erred.

It also seems that the ALJ erred by "ignor[ing] the relative qualifications of competing physicians." *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 440 (4th Cir. 1997). The qualifications of the three doctors that found pneumoconiosis were not contained in the record, while four of the doctors that ruled out pneumoconiosis were board-certified with other documented qualifications. Yet, the ALJ failed to account for this in his analysis.

---

[3]The ALJ stated that he was "[w]eighing all of the evidence," but it is clear from his opinion that he did not weigh all of the evidence "together." *Compton*, 211 F.3d at 208.

[4]It is true that Dr. Rasmussen's diagnosis did not change after seeing *two* negative x-rays readings, but it may have changed after seeing *thirty* negative x-ray readings by six different certified readers.

Additionally, the ALJ improperly gave "less weight" to the three doctors that did not personally examine Bradley, explaining that "[t]heir reports were mainly based upon Dr. Zaldivar's opinion . . . and each other's reports." In actuality, these doctors' diagnoses were also based on a number of different medical records and test results. Our precedent makes clear that it is error to discredit doctors' opinions that are based on medical records simply because the physicians did not personally examine a claimant. *See Compton*, 211 F.3d at 212; *Sterling Smokeless*, 131 F.3d at 441.

Accordingly, we remand with instructions to evaluate all of the evidence together, compare the relative qualifications of the doctors, and give appropriate weight to the opinions of those doctors that based their decisions on medical records.

### III.

We find no reversible error, however, in the ALJ's conclusion that Bradley was totally disabled under the regulations. 20 C.F.R. § 718.204 (2000).[5] All of the doctors that addressed the issue determined that Bradley suffered from mild to moderate pulmonary impairment, yet they disagreed as to whether that impairment would totally prevent Bradley from performing his usual coal mine employment. *See* 20 C.F.R. § 718.204(b).

The ALJ compared the "exertional requirements of the claimant's usual coal mine employment with a physician's assessment of claimant's respiratory impairments." He found that Bradley last worked as a mine inspector, where he walked and crawled in low areas for eight hours a day; a job that the ALJ found "moderately strenuous." He thus concluded that Bradley's moderate impairment would totally disable and prevent him from performing his moderately strenuous job. In making this finding, the ALJ gave Dr. Zaldivar's opinion less weight, because he found that Dr. Zaldivar underestimated the true exertional requirements of Bradley's work and found Dr. Zalvidar's report internally inconsistent because the doctor stated that Bradley could at

---

[5]20 C.F.R. § 718.204 provides in relevant part that "a miner shall be considered totally disabled if pneumoconiosis . . . prevents or prevented the miner . . . [f]rom performing his or her usual coal mine employment."

times perform very arduous manual labor, but yet had a mild to moderate impairment. Although we do not find this latter conclusion necessarily inconsistent, we do find that substantial evidence in the record supports the ALJ's findings and weighing of the opinions on the question of total disability. *See Milburn Colliery*, 138 F.3d at 528. Thus, we find no error in the ALJ's ruling as to Bradley's total disability.

IV.

The final issue is whether the pneumoconiosis, if present, was a "contributing cause" to Bradley's total disability. *Hobbs v. Clinchfield Coal Co.*, 917 F.2d 790, 792 (4th Cir. 1990). Only five of the nine doctors expressed an opinion regarding the cause of any disability. Dr. Rasmussen attributed the disability to pneumoconiosis caused by coal dust exposure and chronic obstructive pulmonary disease caused by cigarette smoking and coal dust exposure. Dr. Zaldivar found the primary causes to be asthma and emphysema. Drs. Jarboe and Loudon concluded that cigarette smoking caused the impairment, while Dr. Castle pointed to both asthma and tobacco abuse. Relying on Dr. Rasmussen's opinion, the ALJ concluded that Bradley had established that his pneumoconiosis was a contributing cause to his total disability.

In so doing, the ALJ concluded that the opinions of Drs. Jarboe, Castle, and Loudon — that any pulmonary impairment was caused from asthma and smoking, not coal dust exposure — were "not sufficient to outweigh the well-reasoned report of Dr. Rasmussen." The ALJ gave their reports "little weight" because their conclusions that Bradley did not suffer from pneumoconiosis conflicted with the ALJ's determination "that the miner has pneumoconiosis and is totally disabled."

This analysis is erroneous for two reasons. First, as discussed above, the ALJ's determination that Bradley suffers from pneumoconiosis may have been in error, and in any event must be re-evaluated. Thus, the doctors' opinions may not conflict with the ALJ's eventual ruling on the pneumoconiosis issue. Second, although Drs. Jarboe, Castle, and Loudon concluded that Bradley did not have pneumoconiosis, they "acknowledge[d] the miner's respiratory or pulmonary

impairment, but nevertheless conclude[d] that an ailment other than pneumoconiosis caused the miner's total disability." *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). Therefore, the ALJ "erred as a matter of law in discounting the physicians' opinions." *Id.* at 1195. This is not to suggest that on remand the ALJ must reverse his conclusion, but he must at least give appropriate weight and consideration to these doctors' opinions.

## V.

We vacate the BRB's decision and remand with instructions to remand to the ALJ for further proceedings consistent with this opinion.

*VACATED AND REMANDED*