# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SANDRA L. BUREK, widow of
Raymond Burek,

*Petitioner,*

v.

VALLEY CAMP COAL COMPANY;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

*Respondents.*

No. 00-1633

On Petition for Review of an Order
of the Benefits Review Board.
(99-694-BLA)

Argued: April 2, 2001

Decided: June 18, 2001

Before LUTTIG and TRAXLER, Circuit Judges, and
Lacy H. THORNBURG, United States District Judge for the
Western District of North Carolina, sitting by designation.

---

Petition denied by unpublished opinion. Judge Traxler wrote the
majority opinion, in which Judge Luttig joined. Judge Thornburg
wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Timothy Francis Cogan, CASSIDY, MYERS, COGAN,
VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Peti-

tioner. Ronald Bruce Johnson, MCDERMOTT & BONENBERGER, P.L.L.C., Wheeling, West Virginia, for Respondents.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

TRAXLER, Circuit Judge:

Sandra L. Burek petitions for review of the order of the Benefits Review Board ("the Board") upholding an Administrative Law Judge's ("ALJ") denial of survivor's benefits under the Black Lung Benefits Act ("the Act"), 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 2000). We deny the petition.

I.

Raymond Burek worked in the coal mines for almost ten years. He began smoking at age thirteen and stopped smoking just two years before his death. Plagued by respiratory difficulties during the last years of his life, Mr. Burek died on April 21, 1997, at the age of sixty-seven. His attending physician listed pulmonary arrest as the cause of death. Believing Mr. Burek's death to have been caused or hastened by pneumoconiosis, Mrs. Burek timely filed an application for survivor's benefits under the Act. *See* 20 C.F.R. § 718.205(a) (2000) ("Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis."). A claims examiner determined that Mrs. Burek was entitled to benefits, and Valley Camp Coal Company ("VCCC"), the responsible operator under the Act, requested a hearing. A hearing was held on October 9, 1998, before the ALJ and the parties presented testimony and exhibits. The ALJ concluded that Mrs. Burek failed to establish that pneumoconiosis caused, contributed to, or hastened her husband's death. Accordingly, benefits were denied. The Board affirmed the ALJ's decision and this petition for review followed.

II.

We review a decision awarding or denying benefits to determine whether the factual findings of the ALJ are supported by substantial evidence. *See Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *NLRB v. Peninsula Gen. Hosp. Med. Ctr.*, 36 F.3d 1262, 1269 (4th Cir. 1994) (internal quotation marks omitted). Though substantial evidence must certainly amount to more than a scintilla, it may also be less than a preponderance. *See AT&T Wireless PCS, Inc. v. City Council*, 155 F.3d 423, 430 (4th Cir. 1998). In assessing whether the findings are supported by substantial evidence, we must ascertain whether the ALJ has examined all relevant evidence and offered a sufficient explanation for his "rationale in crediting certain evidence." *Milburn*, 138 F.3d at 528. The legal conclusions of the ALJ and Board are reviewed "de novo to determine whether they are rational and consistent with applicable law." *Id.*

Mrs. Burek is entitled to benefits under the Act if she demonstrates that (1) her husband suffered from pneumoconiosis, (2) the pneumoconiosis arose at least in part out of coal mine employment, and (3) her husband's death was due to pneumoconiosis. *See United States Steel Mining Co. v. Director, OWCP*, 187 F.3d 384, 388 (4th Cir. 1999). The death of a coal miner is considered "due to" pneumoconiosis if pneumoconiosis was a "substantially contributing cause" of death. 20 C.F.R. §§ 718.205(c)(2), (4) (2000). A claimant seeking benefits may establish this causal connection by demonstrating that pneumoconiosis "actually hastened the miner's death." *Shuff v. Cedar Coal Co.*, 967 F.2d 977, 979-80 (4th Cir. 1992). The parties have stipulated that Mr. Burek suffered from pneumoconiosis that arose in part from his employment at VCCC. Thus, the sole issue in this case is whether sufficient evidence supported the finding that pneumoconiosis did not substantially contribute to Mr. Burek's death.

In reaching his decision, the ALJ considered a number of exhibits submitted by Mrs. Burek. First, the ALJ considered Mr. Burek's death certificate, signed by his treating physician Dr. Attila Lenkey, which listed the cause of death as pulmonary arrest. Second, the judge considered a brief letter prepared by Dr. Lenkey which stated that Mr.

Burek's death "in part, was attributable to his previous lung disease, much of which was acquired during his many years working underground." Claimant's Ex. 3. Third, the judge considered a one-page consultative case review by Dr. Dominic Gaziano. On the form, Dr. Gaziano checked "yes" in response to the question of whether pneumoconiosis was a significantly contributing factor in Mr. Burek's death. Claimant's Ex. 4. Dr. Gaziano then briefly explained that his opinion was based on the death certificate and Dr. Lenkey's brief letter.

The ALJ also considered the deposition and report of Dr. Robert B. Altmeyer, a consultant for VCCC. The basis of Dr. Altmeyer's opinion was his examination of Mr. Burek in 1994 and his review of the relevant medical records. Though Dr. Altmeyer did not believe that Mr. Burek had pneumoconiosis in part because x-rays revealed that irregular opacities occurred in the lower lung zone rather than the upper lung, he nonetheless assumed Mr. Burek suffered from pneumoconiosis in rendering an opinion. Based on Mr. Burek's "reduction in diffusing capacity and severe airways obstruction," coupled with a physical examination of Mr. Burek and pulmonary function studies, Dr. Altmeyer opined that "[t]his indicates that [Mr. Burek] did have severe cigarette-induced chronic obstructive pulmonary disease." Director's Ex. 11. Dr. Altmeyer further offered that "[t]here is nothing either by chest x-ray, physical examination or pulmonary function studies to suggest that [Mr. Burek's] death could have been caused by or aggravated by pneumoconiosis." Director's Ex. 11.

In response to Dr. Altmeyer's report and testimony, Mrs. Burek submitted the report of Dr. Warfield Garson. Dr. Garson challenged Dr. Altmeyer's belief that Mr. Burek was not suffering from pneumoconiosis. However, Dr. Garson offered no opinion on the factors leading to or contributing to Mr. Burek's death. Hence, the ALJ dismissed Dr. Garson's report as irrelevant.

Based on proffered testimony and reports, the ALJ concluded that pneumoconiosis did not substantially contribute to Mr. Burek's death. The ALJ accorded much weight to the testimony and opinion of Dr. Altmeyer, observing that Dr. Altmeyer's opinion was "well reasoned." J.A. 11. Dr. Lenkey's report, according to the ALJ, was conclusory "and [Dr. Lenkey] failed to offer specific documentation for

his conclusion." J.A. 11. Dr. Gaziano's opinion was not especially probative either, in the ALJ's view, because it was based on Dr. Lenkey's work and the death certificate.

We find that substantial evidence supports the ALJ's denial of benefits and that the ALJ adequately explained the reasons for his ruling. Like the ALJ, we agree that Dr. Altmeyer's report is much more detailed and better reasoned than the other exhibits, and that Dr. Altmeyer offers compelling reasons why Mr. Burek's death was not caused or hastened by pneumoconiosis. Therefore, it was entirely proper for the ALJ to accord it much weight.

Contending that Dr. Lenkey's report should have been given more weight than Dr. Altmeyer's, Mrs. Burek claims that the ALJ erred. In Mrs. Burek's view, the recency of Dr. Lenkey's examination of her husband and Dr. Lenkey's status as treating physician should have been accorded great weight. While the opinions of treating physicians deserve special consideration, an ALJ must not "mechanistically credit[ ], to the exclusion of all other testimony, the testimony from [treating] physicians." *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir. 1997). Moreover, recency of examination simply cannot overcome the absence of specific and cogent medical reasoning. *See Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 192 (4th Cir. 2000) (holding that an expert opinion that fails to offer some reasoning to support the conclusion that pneumoconiosis hastened death is insufficient to support an award of benefits). In the present case, Dr. Lenkey's opinion on the role pneumoconiosis played in Mr. Burek's death is obfuscatory at best—the terse and vague language used simply does not explain why or how pneumoconiosis contributed to or hastened Mr. Burek's demise. Accordingly, the ALJ did not err in giving the report less weight than Dr. Altmeyer's cogent analysis. *See Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997) (stating that an ALJ hearing a black lung claim has the power to make credibility determinations and weigh evidence).

Mrs. Burek also argues that the ALJ did not examine all relevant evidence because he concluded that Dr. Garson's opinion was irrelevant. *See Sparks*, 213 F.3d at 190 (observing "that ALJs have a duty to analyze all of the relevant evidence") (internal quotation marks omitted). The only opinion offered by Dr. Garson was that Mr. Burek

did indeed suffer from pneumoconiosis. The parties stipulated to this fact and therefore Dr. Garson's report was irrelevant to the disputed question in this case. Similarly, Mrs. Burek contends that the ALJ impermissibly ignored the opinions of various physicians who treated Mr. Burek in the emergency room of the Ohio Valley Medical Center in the weeks prior to his death. While the records indicate that these physicians assumed Mr. Burek had pneumoconiosis and suffered from severe lung problems, the records offer no opinions on the cause of death. Hence, the ALJ did not err in refusing to consider these opinions.

Lastly, Mrs. Burek argues that Dr. Altmeyer is hostile to the Act and therefore the ALJ should have discounted Dr. Altmeyer's opinion. Under our case law, "a physician's opinion may be discredited when the physician bases his or her conclusion on a premise fundamentally at odds with the statutory and regulatory scheme." *Lane v. Union Carbide Corp.*, 105 F.3d 166, 173 (4th Cir. 1997) (internal quotation marks omitted). The fact that Dr. Altmeyer did not believe Mr. Burek suffered from pneumoconiosis, but nonetheless assumed Mr. Burek did in rendering an opinion, cannot establish hostility. The use of such an assumption, which was stipulated to by the parties, is appropriate. *See Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) (observing that an expert opinion based on an assumption that is supported by the record is admissible). Moreover, the fact Dr. Altmeyer refused at deposition to disclose what percentage of his income is derived from federal black lung claims does not establish hostility. Dr. Altmeyer estimated that he typically earns $13,000 per year from black lung cases but declined to disclose his annual income. Counsel never moved to compel an answer, and we cannot conclude that Dr. Altmeyer's privacy concerns must be equated with hostility.

III.

For the foregoing reasons, we deny the petition for review.

*PETITION DENIED*

THORNBURG, District Judge, dissenting:

I respectfully dissent.

The issue is whether substantial evidence supports the decision of the Administrative Law Judge (ALJ) that (1) the decedent's death was not due to pneumoconiosis[1]; (2) pneumoconiosis was not a substantially contributing cause of his death; (3) complications of pneumoconiosis did not cause the decedent's death; or (4) the decedent did not have complicated pneumoconiosis.

Appellant's decedent, Raymond, was born in 1929. From July 9, 1968, to March 27, 1978, he worked as a coal miner for Valley Camp Coal Company. In July 1996, he was awarded black lung benefits and he died the following April 21, 1997. Appellant filed a claim for survivors' benefits.

At the benefits hearing, the parties stipulated the decedent had pneumoconiosis arising out of his employment as a coal miner. Thus, the only issue was whether his death was caused by, contributed to, or hastened by that condition. Section 718.205(a) of 20 C.F.R. provides for payment of benefits to eligible survivors of a miner whose death was due to pneumoconiosis. Section 718.205(c) provides:

> For the purpose of adjudicating survivors' claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following criteria is met: (1) Where competent medical evidence established that the miner's death was due to pneumoconiosis, *or* (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner's death or where the death was caused by complications of pneumoconiosis, . . . (4) [s]urvivors are not eligible for benefits where the miner's death . . . was . . . not related to pneumoconiosis, *unless* the evidence establishes that pneumoconiosis was a substantially contributing cause of death.

During a hospital stay in November 1996, decedent's medical history of chronic obstructive pulmonary disease (COPD) for the past ten years was noted as well as pneumoconiosis. Although he had been a

---

[1]Pneumoconiosis, commonly known as black lung disease, is a chronic dust disease of the lungs, including respiratory and pulmonary impairments arising therefrom. 20 C.F.R. § 718.201.

half-a-pack per day smoker for 43 years, decedent had finally quit in 1995. In addition to these chronic ailments, the decedent also suffered from hypertension and non-insulin dependent diabetes.

Decedent was readmitted to the hospital in March and early April 1997. He returned later that month and he died on April 21, 1997. The cause of death listed on the death certificate was pulmonary arrest and no autopsy was performed.

However, decedent's treating physician, Dr. Lenkey, opined in a report dated January 14, 1998, that the cause of death was as follows:

> It is my opinion that Mr. Bureck's lung disease was, in part[,] due to his having worked in the coal mines underground for many years. Based on his pulmonary physiologic impairment, which was 100%, approximately 50% of that is and should be attributable to his occupational related lung disease because of his long term exposure to coal dust during a time period when many safety provisions were not taken underground. It is my best informed and educated opinion that Mr. Bureck's death, in part, was attributable to his previous lung disease, much of which was acquired during his many years working underground.

In February 1998, Dr. Gaziano opined that pneumoconiosis was a significant contributing factor in Raymond's death. In notes to Attorney J. Marty Mazezka on November 30, 1992, Dr. Gaziano stated: "He is fully impaired from the irreversible [pulmonary] condition. He is totally impaired due to CWP." These notes were preceded by a detailed examination report dated May 31, 1992, and eight pages of chart and test results.

Another medical consultative case review was conducted by Dr. Garson in September 1998. He concluded that the decedent's past employment as a coal miner had led to two respiratory diseases: pneumoconiosis and COPD. He also acknowledged that cigarette use contributed to these diseases.

The Respondent's expert, Dr. Altmeyer, examined the decedent in

October 1994 in connection with his claim for black lung benefits.[2] Based on his 1994 examination and a review of the medical records, Dr. Altmeyer opined in February 1998 that the cause of the decedent's death was COPD, not pneumoconiosis. Indeed, he acknowledged that *if* the decedent had suffered from "simple" pneumoconiosis, it in no manner contributed to his death. Instead, Dr. Altmeyer concluded his death was caused by severe airway obstruction consistent with cigarette-induced lung disease. He also opined that pneumoconiosis had not hastened decedent's death because he was suffering from severe heart disease and congestive heart failure. *See* Report of Robert B. Altmeyer, M.D., dated February 25, 1998.

Our Court has previously observed that "[COPD] . . . is encompassed within the definition of pneumoconiosis for purposes of entitlement to Black Lung benefits." *Warth v. Southern Ohio Coal Co.*, 60 F.3d 173, 175 (4th Cir. 1995). We have also held that where a doctor's "stated credo is that simple pneumoconiosis does not 'as a rule' cause total disability . . . it is perfectly reasonable to discredit [that] expert's conclusion . . . [because] that expert bases his conclusion on a premise fundamentally at odds with the statutory and regulatory scheme." *Thorn v. Itmann Coal Co.*, 3 F.3d 713, 718-19 (4th Cir. 1993). Dr. Altmeyer's adamant denial that decedent had pneumoconiosis, despite the parties' stipulation that he did, renders his opinion based on a "premise fundamentally at odds with the statutory and regulatory scheme." *Id.* Moreover, it shows a clear bias against the claimant. *See also Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 760 n.7 (4th Cir. 1999) (doctor's testimony that "simple pneumoconiosis cannot cause, substantially contribute to, or hasten death" amounts to a belief that no one is entitled to benefits under the Black Lung Act). *Cf.* Dr. Altmeyer's Report, *supra* ("There is no evidence this man had pneumoconiosis."); Deposition of Robert B. Altmeyer, M.D., at 66 ("I have never seen simple coal-worker's pneumoconiosis significantly contribute to death." . . . "But in general, you don't believe that a simple coal-worker's pneumoconiosis can be sufficiently impairing to make a death significantly related to it?" . . . "A simple coal-worker's pneumoconiosis, in general, I agree with that

---

[2]Decedent, who applied for black lung benefits as early as 1992, was awarded benefits in July 1996 despite Dr. Altmeyer's opinion that he did not have pneumoconiosis.

statement."). Disregarding the stipulation and concluding the decedent did not have the disease calls into question the value of the doctor's entire testimony. *Grigg v. Director, OWCP*, 28 F.3d 416, 419 (4th Cir. 1994) (holding that the opinion disregarding disability causation of a doctor who erroneously fails to diagnose pneumoconiosis is not worthy of enough weight to rebut the interim presumption pursuant to regulations).

As noted above, the conclusion that decedent was not a pneumoconiosis victim was not a new position for Dr. Altmeyer. In 1996 when ALJ Tierney awarded benefits contrary to Dr. Altmeyer's findings, the order read in part as follows:

> There are three physicians who found that the claimant has coal workers' pneumoconiosis as a result of coal mine employment. All agree that the disease substantially contributes to his disability.

> The opinions of Drs. Lenkey, Gaziano and Del Vecchio are very similar. All found pneumoconiosis in spite of negative x-rays. All found the claimant's coal workers' pneumoconiosis to be a significant contributing factor to his disability. All considered the claimant's long smoking history.

> Only Dr. Altmeyer disagrees. He says that the claimant's condition is significantly related to smoking. He points to the claimant['s] long standing smoking history.

> The majority of well-reasoned medical opinions from the doctors covering the period 1986 through 1995 is that the claimant has pneumoconiosis caused by coal mine employment and that it is disabling. Dr. Altmeyer's sole dissenting opinion cannot be given controlling weight.

App., at 3. The final order denying death benefits, which gave rise to this appeal, completely ignores the factual basis for the previous determination of disability and entitlement. ALJ Lesniak discredited the opinions of Drs. Lenkey and Gaziano (two of the three doctors relied on in the quoted opinion) as well as a third doctor, Dr. Warfield

Garson, all giving opinions contrary to that of Dr. Altmeyer. It is passing strange that ALJ Lesniak is impressed by the fact that "Dr. Altmeyer is board certified in pulmonary and internal medicine," but makes no mention of the same board certification held by Dr. Lenkey. Where the treating physician has the same credentials as an opposing expert, it is arbitrary to dismiss his opinion without considering his ten-year history of treatment of the decedent. Nor was the ALJ impressed that Dr. Altmeyer had never found any miner disabled due to coal worker's pneumoconiosis. Altmeyer Deposition, at 80, 16. Moreover, Dr. Altmeyer labored under several factual errors. He did not know that decedent had quit smoking well before his death. *Id.*, at 69. He thought the decedent's exposure to coal dust was limited to a six month period. And, he failed to note the decedent's condition of cor pulmonale (CP), a cardiovascular disease associated with pneumoconiosis as an end-stage complication. *Mancia v. Director, OWCP*, 130 F.3d 579, 585 (3rd Cir. 1997). Contrary to conclusions of three other physicians, Dr. Altmeyer alone found no evidence "that this man's death was due to pneumoconiosis." *See* Altmeyer's Report, at 3.

The ALJ's reliance on one doctor's opinion who denies the existence of the disease to which the parties stipulated and which was found by every other doctor, is not a valid basis for benefits denial. See Report of J. J. Del Vecchio, dated September 30, 1986, Director's Exhibit 19 (finding CWP, COPD, small airway disease and moderate air trapping); Report of Michael B. Kovalick, dated March 26, 1997, Director's Exhibit 9 (finding decedent to have history of black lung disease, emphysema and discharge diagnoses of acute hypercapneic and hypoxemic respiratory failure). *See also Milburn Colliery Co. v. Hicks*, 138 F.3d 524 (4th Cir. 1998) (finding error in ALJ's failure to examine all the relevant evidence and discounting physician qualifications).

Nor may a treating physician's opinion be ignored.

> While the [Board] is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time. Therefore, it may be disregarded only if

> there is persuasive contradictory evidence. [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.

*Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) (citations omitted). Appellant has amply supported her entitlement to benefits by substantial evidence and should be granted same.

> Claimants need not prove entitlement beyond a doubt, but rather by a simple preponderance of the evidence. Assessment of the complexities of human health and disease defies death-and-taxes confidence. . . . [Dr. Lenkey] said that pneumoconiosis "could be considered a complicating factor in the demise of Mr. [Bureck]" . . . . In the full context of his report and of the gross observations he alone [as the treating physician] made, the reasonableness of such a reading is even clearer. [Dr. Lenkey] was plainly impressed by both the severity of [Bureck's] pneumoconiosis and by the respiratory failure that ushered [Bureck] through death's door.

*Piney Mountain Coal Co.*, 176 F.3d at 763.

For the foregoing reasons, I conclude that the ALJ's decision is not supported by substantial evidence. I would, therefore, reverse and remand for entry of a final order requiring payment of benefits to Appellant; or, in the alternative, reverse and remand directing the Board to remand to a new ALJ with instructions to review the record and, if deemed necessary, to hold an additional hearing to determine whether Appellant is entitled to benefits.