PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BILL BRANCH COAL CORPORATION,
Petitioner,

v.

SHIRLEY SPARKS, Widow of Willard

Sparks; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

No. 99-1836

On Petition for Review of an Order
of the Benefits Review Board.
(95-478-BLA, 98-1069-BLA)

Argued: April 5, 2000

Decided: May 22, 2000

Before WILKINSON, Chief Judge, and
WILKINS and WILLIAMS, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Williams wrote
the opinion, in which Chief Judge Wilkinson and Judge Wilkins
joined.

_____

**COUNSEL**

**ARGUED:** Ronald Eugene Gilbertson, KILCULLEN, WILSON &
KILCULLEN, Washington, D.C., for Petitioner. Vincent John Car-
roll, Richlands, Virginia, for Respondents.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILLIAMS, Circuit Judge:

Shirley Sparks (Mrs. Sparks) applied for benefits under the Black Lung Benefits Act (the Act), 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 1999), after her husband, Willard Sparks (Mr. Sparks) died. Mrs. Sparks was awarded benefits in two separate orders by administrative law judges (ALJs) and the Benefits Review Board (the Board) subsequently upheld the award. Bill Branch Coal Corporation (Bill Branch), Mr. Sparks's employer at the time of his death, was ordered to pay the benefits and Bill Branch now petitions for review of the Board's decision. Because we conclude that the ALJs failed to explain adequately their reasoning for crediting some medical evidence over other medical evidence and relied upon evidence that was insufficient to support the award of benefits, we vacate and remand for further proceedings consistent with this opinion.

I.

Mr. Sparks worked for over thirty years in the coal mines. On August 6, 1990, Mr. Sparks died from an apparent heart attack. At the time of his death, Mr. Sparks was employed by Bill Branch.

Dr. Mario Stefanini performed an autopsy on Mr. Sparks's body to evaluate the presence of coal workers' pneumoconiosis. In his autopsy report, Dr. Stefanini concluded that Mr. Sparks suffered from heart disease, including "the occlusion and near occlusion of major coronary branches," and that this caused Mr. Sparks's death. (J.A. at 62.) Dr. Stefanini also noted that "agonal aspiration and [the] failure to expectorate mucus" were contributing causes of death. (J.A. at 62.) In addition, Dr. Stefanini noted the presence of coal workers' pneumoconiosis, although he did not explain how this condition related to Mr. Sparks's death. On the death certificate prepared by Dr. Stefanini, the immediate cause of death was listed as "[a]cute myocardial infarc-

2

tion" brought on by "[o]cclusion of anterior descending coronary artery" and years of "[a]therosclerotic disease." (J.A. at 59.) Listed in a blank for "[o]ther significant conditions contributing to death" was "[c]oal workers' pneumoconiosis, simple." (J.A. at 59.) On November 16, 1990, Mrs. Sparks filed a claim for benefits in which she asserted that pneumoconiosis caused her husband's death within the meaning of the Act.

Bill Branch and Mrs. Sparks enlisted a number of physicians to provide medical opinions concerning whether pneumoconiosis contributed to or hastened Mr. Sparks's death. After reviewing the available evidence, five pulmonary experts each concluded that Mr. Sparks's death was not related to or hastened by his pneumoconiosis. In addition to these pulmonary experts, several pathologists also offered opinions in the case. Dr. Echols A. Hansbarger, Jr. noted that Mr. Sparks suffered from simple coal workers' pneumoconiosis, but opined that it did not contribute to his death in any way. Dr. Hansbarger also provided deposition testimony to the effect that Mr. Sparks would have died from his severe heart disease at the same time and place, regardless of his pneumoconiosis. In an opinion rendered on February 8, 1993, Dr. Jerome Kleinerman determined that Mr. Sparks's death "was not the result of" his pneumoconiosis. (J.A. at 148.) After reviewing the autopsy report prepared by Dr. Stefanini and seventeen slides of lung tissue taken from Mr. Sparks's body, Dr. Richard L. Naeye indicated in a report dated December 24, 1990 that, "[a]ssuming that the lung sections provided for [his] review [were] representative of the lungs as a whole," Mr. Sparks's pneumoconiosis "could have contributed to his presumed fatal cardiac arrhythmia."[1] (J.A. at 113.) In a consultation report prepared on July 20, 1993, Dr. Jeffrey A. Kahn opined that Mr. Sparks's pneumoconiosis "was a contributing factor in [his] death." (J.A. at 164.) Remarkably, Dr. Kahn's report was the only medical opinion offered in this case that entirely failed to note Mr. Sparks's heart condition.

In a February 25, 1994 order, Administrative Law Judge Bonfanti ruled that Mrs. Sparks demonstrated that her husband's pneumoconiosis contributed to his death, and, thus, she was entitled to benefits. Judge Bonfanti explained that he "carefully considered the opinions

_____

[1] As discussed below, Dr. Naeye later revised this opinion.

3

and rationale of the[ ] pulmonary experts" and although he found "their opinions . . . probative," he found "more probative the opinions of the pathologists." (J.A. at 43.) Judge Bonfanti did not elaborate on his reasons for discounting the pulmonary experts' opinions. Judge Bonfanti went on to review the opinions of the pathologists, and, after summarily concluding that Dr. Hansbarger's opinion was "unconvincing" and noting that Dr. Kleinerman "did not offer any opinion as to whether the pneumoconiosis contributed to or hastened" Mr. Sparks's death, held that he found "persuasive the report of Dr. Kahn, which is supported by Dr. Stefanini and Dr. Naeye." (J.A. at 44.) On August 30, 1995, the Board affirmed the decision.

Bill Branch then petitioned for modification on the grounds that a mistake of fact was committed and a second ALJ, Judge Torkington, eventually reviewed the original record, as well as new evidence developed by the parties. Among the new evidence presented were three pathologists' reports: a consultation report prepared by Dr. Miles Jones, an updated medical report by Dr. Naeye dated May 3, 1996, and an updated report by Dr. Kleinerman dated September 30, 1995. In his report, Dr. Jones opined that Mr. Sparks's pneumoconiosis was a contributing cause of his death. Dr. Jones further believed that Mr. Sparks might have suffered from complicated pneumoconiosis, rather than simple pneumoconiosis. Dr. Naeye's new report indicated that after he had reviewed additional evidence, primarily consisting of chest x-rays and pulmonary function studies conducted two years before Mr. Sparks's death, he came to the opinion that Mr. Sparks's pneumoconiosis was not severe enough to have contributed to his death. Dr. Naeye explained that his earlier opinion was based upon lung tissue slides that he had since been able to determine were unrepresentative of Mr. Sparks's lungs as a whole. Finally, Dr. Kleinerman had considered additional evidence since his initial medical opinion, and, in his updated report, he submitted a more specific conclusion "that pneumoconiosis did not cause, contribute to or hasten Mr. Sparks's death." (J.A. at 163.)

In evaluating the original record and the new evidence provided by the parties, Judge Torkington concluded that Mr. Sparks's pneumoconiosis was simple, not complicated,[2] but that it did hasten his death.

_____

[2] Had Mr. Sparks suffered from "complicated" pneumoconiosis he would have been entitled to an irrebuttable presumption that his death

4

In her April 3, 1998 decision and order, Judge Torkington thus upheld the award of benefits to Mrs. Sparks and denied Bill Branch's request for modification. In so holding, Judge Torkington credited Dr. Stefanini as "the most reliable source of evidence of why the miner died" because Dr. Stefanini was the only physician to "see[ ] and analyz[e] the whole body at the time of death."[3] (J.A. at 24.) She also noted that Dr. Naeye's original opinion supported this finding, and she rejected Dr. Naeye's most recent opinion because it was based upon x-rays and studies conducted two years before Mr. Sparks's death, and, thus, were too outdated.[4] Judge Torkington similarly rejected the opinions

_____

was "due to" pneumoconiosis within the meaning of the Act. See 20 C.F.R. § 718.304 (1999); Double B Mining, Inc. v. Blankenship, 177 F.3d 240, 243 (4th Cir. 1999)

[3] The day after Mr. Sparks's death, Dr. Stefanini performed the autopsy at a funeral home after the body had been partially embalmed. Although it is somewhat unclear from the record, it appears that Sparks's family requested the autopsy. The autopsy report indicates that "authorization" for the autopsy was given by Mrs. Sparks and that the autopsy was "requested to evaluate the presence of coal worker[s'] pneumoconiosis." (J.A. at 60, 62.) Judge Torkington commented in a footnote in her decision and order that Dr. Stefanini "was not retained by either party" and went on to conclude that Dr. Stefanini's "obvious lack of bias" was an additional "reason to rely on his opinion and findings." (J.A. at 24.) As it appears that Dr. Stefanini performed the autopsy at the family's request, we question the ALJ's characterization of his neutrality, although we find the issue fairly insignificant for this case's resolution. We also point out that, as the autopsy was performed the day after Mr. Sparks's death and after the body was partially embalmed, the ALJ's and the Board's references to Dr. Stefanini's examination taking place "at the time of death" are somewhat misleading.

[4] The 1988 chest x-rays and pulmonary function studies were the last conducted on Mr. Sparks prior to his death. In rejecting this evidence, Judge Torkington relied upon Dr. Jones's opinion that Mr. Sparks's pneumoconiosis could have progressed in the intervening two years.

In her decision and order, Judge Torkington did not discuss Dr. Jones's opinion that pneumoconiosis was a contributing factor in Mr. Sparks's death. Judge Torkington expressly rejected Dr. Jones's opinion that Mr. Sparks suffered from complicated pneumoconiosis, rather than simple.

5

of Dr. Hansbarger and Dr. Kleinerman because they did not examine Mr. Sparks "at the time of death" and Dr. Kleinerman's updated opinion was based upon the two-year-old x-rays and other"premature" evidence. (J.A. at 27.) Unlike Judge Bonfanti, Judge Torkington noted that she did not rely upon Dr. Kahn's medical opinion because "he did not consider the role of cardiac disease" in Mr. Sparks's death. (J.A. at 27.) Except where she specifically indicated otherwise, Judge Torkington adopted and incorporated by reference the findings and conclusions of Judge Bonfanti.

On appeal, the Board reaffirmed its decision to uphold Judge Bonfanti's original decision and affirmed Judge Torkington's denial of Bill Branch's request for modification. The Board maintained that Judge Bonfanti's failure to articulate his reasoning for discounting the pulmonary experts' opinions was not fatal because his "discussion of the pathologists' findings indicates that he found these physicians to be better qualified to interpret the autopsy evidence and slides in determining whether pneumoconiosis contributed to or hastened" Mr. Sparks's death. (J.A. at 10.) The Board also ruled that Judge Torkington was within her discretion to accord greater weight to Dr. Stefanini's medical opinion on the ground that he was the only doctor to conduct a gross examination of Mr. Sparks's body"at the time of death." (J.A. at 13.) Similarly, the Board concluded that Judge Torkington was within her discretion to discount completely the opinions of the physicians who did not physically examine Mr. Sparks's body. The Board also concluded that "Judge Torkington properly found that Dr. Stefanini's autopsy findings in conjunction with his notation on the death certificate that coal workers' pneumoconiosis was an other significant condition contributing to death is sufficient to show that pneumoconiosis hastened the miner's death." (J.A. at 16 (internal quotation marks omitted).)

Following the Board's decision, Bill Branch petitioned this Court for review.

II.

Mrs. Sparks is entitled to benefits under the Act if she demonstrates that (1) her husband suffered from pneumoconiosis, (2) the pneumoconiosis arose at least in part out of coal mine employment, and (3)

6

her husband's death was due to pneumoconiosis. See United States Steel Mining Co. v. Director, OWCP, 187 F.3d 384, 388 (4th Cir. 1999) (citing relevant regulations). A coal miner's death is considered "due to" pneumoconiosis if pneumoconiosis was a "substantially contributing cause" of the miner's death. See 20 C.F.R. § 718.205(c)(2), (4) (1999). We have held that a widow-claimant may establish this causal connection by proving that pneumoconiosis"actually hastened the miner's death." See Shuff v. Cedar Coal Co., 967 F.2d 977, 979-80 (4th Cir. 1992).

We review Mrs. Sparks's claim for benefits under the Act to determine whether substantial evidence supports the factual findings of the ALJs and whether the legal conclusions of the Board and the ALJs are rational and consistent with applicable law. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir.1998). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). In prior decisions, we have made clear that ALJs have a duty to analyze "all of the relevant evidence" and to provide a sufficient explanation for their "rationale in crediting certain evidence." Id.; see also Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997). Before determining whether substantial evidence supports the ALJs' factual findings, we address whether the ALJs have adhered to these duties. See Milburn Colliery, 138 F.3d at 528; Sterling Smokeless Coal, 131 F.3d at 439.

III.

Our review of Judge Bonfanti's and Judge Torkington's decisions awarding benefits to Mrs. Sparks indicates that the ALJs failed to explain adequately their rationale for finding that pneumoconiosis contributed to or hastened Mr. Sparks's death.

The medical evidence indicates that each of five pulmonary experts to review the available evidence offered the opinion that Mr. Sparks's pneumoconiosis did not contribute to his death in any way. Judge Bonfanti briefly recounted these doctors' opinions before explaining that he had "carefully considered the opinions and rationale of these pulmonary experts" and "[w]hile their opinions are probative, I find more probative the opinions of the pathologists." (J.A. at 43.) With

7

these words, Judge Bonfanti completely discounted the opinions of five medical experts. Judge Torkington failed to mention specifically the pulmonary experts in her opinion, leaving us to conclude that she adopted Judge Bonfanti's reasoning in discounting this evidence. Of course, Judge Bonfanti's opinion provides no reasoning for his decision to discount the pulmonary experts' opinions, and, thus, there was none for Judge Torkington to adopt. The ALJs' failure to provide a rationale for their discrediting the pulmonary experts' opinions was error. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 533 (4th Cir. 1998) (ruling that the ALJ failed to explain adequately his reasons for crediting certain evidence and discrediting other evidence).

When ALJs simply state that they have "considered" certain evidence and have decided to discount it, the Board and reviewing courts are left to guess at the judges' rationale. Indeed, the Board undertook such guesswork when it sought to supply Judge Bonfanti's reasoning for him. Perhaps the Board guessed correctly that the ALJ considered the pathologists "better qualified to interpret the autopsy evidence and slides," and, thus, gave greater weight to the pathologists' opinions, but we cannot tell from the ALJ's decision. We decline to continue this guessing game and ask the ALJ assigned to this case on remand to better explain her rationale so that we are not left in the difficult position of attempting to review her factual findings without any understanding of how she reached them.

Judge Bonfanti similarly failed to explain sufficiently his reasoning for discounting the opinion of Dr. Hansbarger. Judge Bonfanti considered Dr. Hansbarger's opinion to be the lone pathologist's opinion that directly stood against Mrs. Sparks's claim. After briefly reciting Dr. Hansbarger's medical opinion, Judge Bonfanti rejected this evidence, stating only that he found Dr. Hansbarger's report "unconvincing." (J.A. at 44.) The ALJ provided no explanation as to why he found the report unconvincing or even why he found other evidence more persuasive. Judge Bonfanti's failure to explain properly his reasoning in this regard suffers from the same infirmities noted above and we ask that on remand the ALJ provide a more thorough explanation for decisions to credit certain medical evidence over other evidence.

8

Although Judge Torkington did a better job in attempting to explain her rationale, we are troubled by her decision to credit Dr. Stefanini's opinion to the exclusion of all others on the apparent ground that only Dr. Stefanini physically examined the whole body "at the time of death." (J.A. at 24.) Judge Torkington's opinion indicates that she found that pneumoconiosis contributed to Mr. Sparks's death based only upon the autopsy report and death certificate prepared by Dr. Stefanini.[5] In so finding, Judge Torkington stressed that "[n]one of the other medical experts actually examined the miner." (J.A. at 27.) We have previously noted that it is improper for an ALJ to "`mechanistically credit, to the exclusion of all other testimony,' the testimony of an examining or treating physician solely because the doctor personally examined the claimant." Milburn Colliery, 138 F.3d at 533 (quoting Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 441 (4th Cir. 1997)). To the extent that Judge Torkington credited Dr. Stefanini's opinion over all others solely because Dr. Stefanini was singularly able to conduct an examination of Mr. Sparks's whole body shortly after death, she erred. ALJs are not to credit the opinions of an autopsy prosector, to the exclusion of all other experts, solely because the autopsy prosector was the only physician to examine the whole body near the time of death.[6]

_____

[5] Judge Torkington expressly disavowed any reliance upon Dr. Kahn's report because Dr. Kahn failed to consider the role of heart disease in Mr. Sparks's death. Judge Torkington did not discuss Dr. Jones's opinion that pneumoconiosis contributed to Mr. Sparks's death other than to reject Dr. Jones's view that Mr. Sparks suffered from complicated pneumoconiosis. Finally, Judge Torkington did note that before Dr. Naeye changed his opinion he originally opined that pneumoconiosis could have contributed to Mr. Sparks's death. We do not read Judge Torkington's opinion as relying upon Dr. Naeye's original opinion in any way, however, as Dr. Naeye himself clearly altered his initial opinion after having had the benefit of additional medical evidence.

[6] We also note that Judge Torkington provided no reasoning for concluding that an autopsy prosector's ability to conduct a gross examination renders his opinion superior to those experts who merely reviewed slides and the autopsy report. Nor was there evidence in the record to that effect. See Freeman United Coal Mining Co. v. Stone, 957 F.2d 360, 362-63 (7th Cir. 1992) (noting that because "[n]othing in the record suggests that access to the body enhances the accuracy of diagnoses based on autopsy evidence," the ALJ erred in crediting the autopsy prosector's opinion over other medical opinions solely because the prosector had such access).

IV.

Judge Torkington and the Board believed that Dr. Stefanini's list-ing of "[c]oal workers' pneumoconiosis, simple" in the blank for "[o]ther significant conditions contributing to death" on Mr. Sparks's death certificate, combined with the notation in the autopsy report that pneumoconiosis was present at the time of death, provided a suffi-cient basis for finding that pneumoconiosis contributed to Mr. Sparks's death within the meaning of the Act. We disagree.

Dr. Stefanini provided no explanation of how, or if, Mr. Sparks's pneumoconiosis hastened his death. He never explained the connec-tion between the miner's pneumoconiosis and his death. The death certificate indicates that Dr. Stefanini believed that pneumoconiosis contributed to Mr. Sparks's death, but Dr. Stefanini's failure to offer some reasoning for this view renders his bald conclusion insufficient to support the ALJ's finding. Other federal courts of appeals have concluded that a reference on a death certificate to pneumoconiosis as an other condition contributing to death, without further explana-tion, does not constitute a reasoned medical opinion upon which to base an award of benefits under the Act. See Lango v. Director, OWCP, 104 F.3d 573, 577 (3d Cir. 1997); Freeman United Coal Min-ing Co. v. Stone, 957 F.2d 360, 362-63 (7th Cir. 1992); Risher v. OWCP, 940 F.2d 327, 331 (8th Cir. 1991). We agree with these courts.

In addition, contrary to Judge Torkington's and the Board's conclu-sion that the autopsy report's findings cured any deficiency on the part of Dr. Stefanini to explain a causal connection between Mr. Sparks's pneumoconiosis and his death, we find that the autopsy report sheds no light on Dr. Stefanini's reasoning. In the autopsy report, Dr. Stefanini notes the presence of pneumoconiosis, but there is absolutely no indication of how the pneumoconiosis might have related to Mr. Sparks's death.[7] Dr. Stefanini failed to provide any rea-

_____

[7] For example, we note that Dr. Stefanini did not attempt to tie Mr. Sparks's pneumoconiosis to his inability to expectorate mucus in the last moments of his life. Cf. Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 763-64 (4th Cir. 1999) (relying upon autopsy prosector's follow-up letter in which he established the requisite nexus between the miner's pneumo-coniosis and the immediate cause of death (failure to expectorate mucus) to uphold award of benefits).

10

soned medical judgment that pneumoconiosis contributed in any way to Mr. Sparks's death. We therefore hold that the death certificate and the autopsy report in this case, without additional support or explanation, fail to provide a basis upon which to sustain a finding that Mr. Sparks's pneumoconiosis hastened his death.

V.

We conclude that the ALJs failed to explain sufficiently their reasoning for crediting certain medical evidence and discrediting other evidence. We also hold that Dr. Stefanini's notation on Mr. Sparks's death certificate that pneumoconiosis contributed to death, without some further explanation, is insufficient to support a finding that Mr. Sparks's death was due to pneumoconiosis within the meaning of the Act. For the reasons contained herein, we vacate the Board's decision upholding the award of benefits to Mrs. Sparks and direct the Board to remand the case to an ALJ for further proceedings consistent with this opinion. On remand, the ALJ shall conduct a fresh review of the relevant evidence and provide reasoning for her ultimate factual findings.

VACATED AND REMANDED