OPINION
TRAXLER, Circuit Judge.
Sandra L. Burek petitions for review of the order of the Benefits Review Board (“the Board”) upholding an Administrative Law Judge’s (“ALJ”) denial of survivor’s benefits under the Black Lung Benefits Act (“the Act”), 30 U.S.C.A. §§ 901-945 (West 1986 & Supp. 2000). We deny the petition.
I.
Raymond Burek worked in the coal mines for almost ten years. He began smoking at age thirteen and stopped smoking just two years before his death. Plagued by respiratory difficulties during the last years of his life, Mr. Burek died on April 21, 1997, at the age of sixty-seven. His attending physician listed pulmonary arrest as the cause of death. Believing Mr. Burek’s death to have been caused or hastened by pneumoconiosis, Mrs. Burek timely filed an application for survivor’s benefits under the Act. See 20 C.F.R. § 718.205(a) (2000) (“Benefits are provided to eligible survivors of a miner whose death was due to pneumoconiosis.”). A claims examiner determined that Mrs. Bu-rek was entitled to benefits, and Valley Camp Coal Company (“VCCC”), the responsible operator under the Act, requested a hearing. A hearing was held on October 9, 1998, before the ALJ and the parties presented testimony and exhibits. The ALJ concluded that Mrs. Burek failed to establish that pneumoconiosis caused, contributed to, or hastened her husband’s death. Accordingly, benefits were denied. The Board affirmed the ALJ’s decision and this petition for review followed.
II.
We review a decision awarding or denying benefits to determine whether the fac *154 tual findings of the ALJ are supported by substantial evidence. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir.1998). “Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” NLRB v. Peninsula Gen. Hosp. Med. Ctr., 36 F.3d 1262, 1269 (4th Cir.1994) (internal quotation marks omitted). Though substantial evidence must certainly amount to more than a scintilla, it may also be less than a preponderance. See AT & T Wireless PCS, Inc. v. City Council, 155 F.3d 423, 430 (4th Cir.1998). In assessing whether the findings are supported by substantial evidence, we must ascertain whether the ALJ has examined all relevant evidence and offered a sufficient explanation for his “rationale in crediting certain evidence.” Milburn, 138 F.3d at 528. The legal conclusions of the ALJ and Board are reviewed “de novo to determine whether they are rational and consistent with applicable law.” Id.
Mrs. Burek is entitled to benefits under the Act if she demonstrates that (1) her husband suffered from pneumoconiosis, (2) the pneumoconiosis arose at least in part out of coal mine employment, and (3) her husband’s death was due to pneumoconiosis. See United States Steel Mining Co. v. Director, OWCP, 187 F.3d 384, 388 (4th Cir.1999). The death of a coal miner is considered “due to” pneumoconiosis if pneumoconiosis was a “substantially contributing cause” of death. 20 C.F.R. §§ 718.205(c)(2), (4) (2000). A claimant seeking benefits may establish this causal connection by demonstrating that pneumoconiosis “actually hastened the miner’s death.” Shuff v. Cedar Coal Co., 967 F.2d 977, 979-80 (4th Cir.1992). The parties have stipulated that Mr. Burek suffered from pneumoconiosis that arose in part from his employment at VCCC. Thus, the sole issue in this case is whether sufficient evidence supported the finding that pneu-moconiosis did not substantially contribute to Mr. Burek’s death.
In reaching his decision, the ALJ considered a number of exhibits submitted by Mrs. Burek. First, the ALJ considered Mr. Burek’s death certificate, signed by his treating physician Dr. Attila Lenkey, which listed the cause of death as pulmonary arrest. Second, the judge considered a brief letter prepared by Dr. Lenkey which stated that Mr. Burek’s death “in part, was attributable to his previous lung disease, much of which was acquired during his many years working underground.” Claimant’s Ex. 3. Third, the judge considered a one-page consultative case review by Dr. Dominic Gaziano. On the form, Dr. Gaziano checked “yes” in response to the question of whether pneumoconiosis was a significantly contributing factor in Mr. Bu-rek’s death. Claimant’s Ex. 4. Dr. Gaziano then briefly explained that his opinion was based on the death certificate and Dr. Lenkey’s brief letter.
The ALJ also considered the deposition and report of Dr. Robert B. Altmeyer, a consultant for VCCC. The basis of Dr. Altmeyer’s opinion was his examination of Mr. Burek in 1994 and his review of the relevant medical records. Though Dr. Alt-meyer did not believe that Mr. Burek had pneumoconiosis in part because x-rays revealed that irregular opacities occurred in the lower lung zone rather than the upper lung, he nonetheless assumed Mr. Burek suffered from pneumoconiosis in rendering an opinion. Based on Mr. Burek’s “reduction in diffusing capacity and severe airways obstruction,” coupled with a physical examination of Mr. Burek and pulmonary function studies, Dr. Altmeyer opined that “[t]his indicates that [Mr. Burek] did have severe cigarette-induced chronic obstructive pulmonary disease.” Director’s Ex. 11. Dr. Altmeyer further offered that *155 “[t]here is nothing either by chest x-ray, physical examination or pulmonary function studies to suggest that [Mr. Burek’s] death could have been caused by or aggravated by pneumoconiosis.” Director’s Ex. 11.
In response to Dr. Altmeyer’s report and testimony, Mrs. Burek submitted the report of Dr. Warfield Garson. Dr. Gar-son challenged Dr. Altmeyer’s belief that Mr. Burek was not suffering from pneumo-coniosis. However, Dr. Garson offered no opinion on the factors leading to or contributing to Mr. Burek’s death. Hence, the ALJ dismissed Dr. Garson’s report as irrelevant.
Based on proffered testimony and reports, the ALJ concluded that pneumoco-niosis did not substantially contribute to Mr. Burek’s death. The ALJ accorded much weight to the testimony and opinion of Dr. Altmeyer, observing that Dr. Alt-meyer’s opinion was “well reasoned.” J.A. 11. Dr. Lenkey’s report, according to the ALJ, was eonelusory “and [Dr. Lenkey] failed to offer specific documentation for his conclusion.” J.A. 11. Dr. Gaziano’s opinion was not especially probative either, in the ALJ’s view, because it was based on Dr. Lenkey’s work and the death certificate.
We find that substantial evidence supports the ALJ’s denial of benefits and that the ALJ adequately explained the reasons for his ruling. Like the ALJ, we agree that Dr. Altmeyer’s report is much more detailed and better reasoned than the other exhibits, and that Dr. Altmeyer offers compelling reasons why Mr. Burek’s death was not caused or hastened by pneumoconiosis. Therefore, it was entirely proper for the ALJ to accord it much weight.
Contending that Dr. Lenkey’s report should have been given more weight than Dr. Altmeyer’s, Mrs. Burek claims that the ALJ erred. In Mrs. Burek’s view, the recency of Dr. Lenkey’s examination of her husband and Dr. Lenkey’s status as treating physician should have been accorded great weight. While the opinions of treating physicians deserve special consideration, an ALJ must not “mechanistically credit! ], to the exclusion of all other testimony, the testimony from [treating] physicians.” Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 441 (4th Cir.1997). Moreover, recency of examination simply cannot overcome the absence of specific and cogent medical reasoning. See Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 192 (4th Cir.2000) (holding that an expert opinion that fails to offer some reasoning to support the conclusion that pneumoconiosis hastened death is insufficient to support an award of benefits). In the present case, Dr. Lenkey’s opinion on the role pneumoconiosis played in Mr. Burek’s death is obfuscatory at best — the terse and vague language used simply does not explain why or how pneumoconiosis contributed to or hastened Mr. Burek’s demise. Accordingly, the ALJ did not err in giving the report less weight than Dr. Altmeyer’s cogent analysis. See Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949 (4th Cir.1997) (stating that an ALJ hearing a black lung claim has the power to make credibility determinations and weigh evidence).
Mrs. Burek also argues that the ALJ did not examine all relevant evidence because he concluded that Dr. Garson’s opinion was irrelevant. See Sparks, 213 F.3d at 190 (observing “that ALJs have a duty to analyze all of the relevant evidence”) (internal quotation marks omitted). The only opinion offered by Dr. Garson was that Mr. Burek did indeed suffer from pneumoconiosis. The parties stipulated to this fact and therefore Dr. Garson’s report was irrelevant to the disputed question in this case. Similarly, Mrs. Burek contends *156 that the ALJ impermissibly ignored the opinions of various physicians who treated Mr. Burek in the emergency room of the Ohio Valley Medical Center in the weeks prior to his death. While the records indicate that these physicians assumed Mr. Burek had pneumoconiosis and suffered from severe lung problems, the records offer no opinions on the cause of death. Hence, the ALJ did not err in refusing to consider these opinions.
Lastly, Mrs. Burek argues that Dr. Alt-meyer is hostile to the Act and therefore the ALJ should have discounted Dr. Alt-meyer’s opinion. Under our case law, “a physician’s opinion may be discredited when the physician bases his or her conclusion on a premise fundamentally at odds with the statutory and regulatory scheme.” Lane v. Union Carbide Corp., 105 F.3d 166, 173 (4th Cir.1997) (internal quotation marks omitted). The fact that Dr. Alt-meyer did not believe Mr. Burek suffered from pneumoconiosis, but nonetheless assumed Mr. Burek did in rendering an opinion, cannot establish hostility. The use of such an assumption, which was stipulated to by the parties, is appropriate. See Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir.1994) (observing that an expert opinion based on an assumption that is supported by the record is admissible). Moreover, the fact Dr. Alt-meyer refused at deposition to disclose what percentage of his income is derived from federal black lung claims does not establish hostility. Dr. Altmeyer estimated that he typically earns $13,000 per year from black lung cases but declined to disclose his annual income. Counsel never moved to compel an answer, and we cannot conclude that Dr. Altmeyer’s privacy concerns must be equated with hostility.
III.
For the foregoing reasons, we deny the petition for review.

PETITION DENIED.