UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

EASTERN ASSOCIATED COAL
CORPORATION,

*Petitioner,*

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; JUDY
G. LILLY, Widow of Harry W. Lilly,

*Respondents.*

No. 02-1694

On Petition for Review of an Order of
the Benefits Review Board.
(01-393-BLA)

Argued: September 23, 2003

Decided: October 30, 2003

Before MOTZ, KING, and SHEDD, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Mark Elliott Solomons, GREENBERG TRAURIG,
Washington, D.C., for Petitioner. Frederick Klein Muth, HENSLEY,
MUTH, GARTON & HAYES, Bluefield, West Virginia, for Respondents. **ON BRIEF:** Laura Metcoff Klaus, GREENBERG TRAURIG,
Washington, D.C., for Petitioner.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Eastern Associated Coal Corporation petitions for our review of the January 24, 2002 Decision and Order of the Benefits Review Board (the "BRB"), upholding the award of Black Lung disability and survivor benefits to Judy Lilly, the widow of coal miner Harry Lilly.[1] An Administrative Law Judge ("ALJ") determined that Mr. Lilly was disabled by coal workers' pneumoconiosis and that the disease caused his death. As explained below, the ALJ's decision was supported by substantial evidence, and she offered sufficient rationale for crediting and discrediting the conflicting evidence of certain physicians. We therefore deny the petition for review.

I.

Harry Lilly worked underground in the coal mines of southern West Virginia for approximately eighteen years. He was most recently employed as a belt man at an Eastern mine near Bald Knob, West Virginia, until he was laid off in 1992. Mr. Lilly filed his initial claim for Black Lung disability benefits on September 14, 1993. That initial claim was denied, as was his motion for modification.

In 1996, Mr. Lilly, a cigarette smoker, was diagnosed with lung cancer and, as a result, the upper lobe of his right lung was removed. Although this surgery was largely successful in removing his primary cancer, within three months doctors discovered that the cancer had metastasized to Mr. Lilly's bones and spine. Because the cancer had reached an advanced stage, Mr. Lilly was not treated with radiation or chemotherapy. Instead, he was placed under hospice care to make his final months more bearable. Mr. Lilly subsequently developed pneumonia and died on November 2, 1996.

---

[1]The Director of the Office of Workers' Compensation Programs did not participate in this appeal.

After Mr. Lilly's death, his wife Judy filed a claim for Black Lung survivor's benefits, which was denied. Mrs. Lilly then appealed the denial of both her claim for survivor's benefits and her husband's claim for disability benefits. An ALJ heard Mrs. Lilly's appeal and, on January 29, 1999, granted benefits on both claims (the "ALJ Decision"). Eastern appealed the ALJ Decision to the BRB, contending that the ALJ erred by mechanistically according greater weight to the opinions of Dr. Donald Rasmussen, Mr. Lilly's treating physician, and Dr. Antonio Dy, the prosector of Mr. Lilly's autopsy. Eastern also claimed that the ALJ erred in failing to offer a sufficient explanation for her decision to discredit the evidence of several other physicians. The BRB agreed with Eastern and, on April 7, 2000, remanded the matter to the ALJ with instructions that her rationale for crediting and discrediting the evidence of the physicians be explained. On December 22, 2000, the ALJ offered a further explanation of her rationale and again awarded benefits to Mrs. Lilly (the "ALJ Remand Decision"). Eastern again appealed to the BRB, which, by its Order of January 24, 2002 (the "BRB Decision"), upheld the ALJ's award of benefits. Eastern now petitions for review of the BRB Decision.

## II.

This court reviews a BRB decision to determine whether it properly concluded that the ALJ's decision was supported by substantial evidence. *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998). As we have explained, "[s]ubstantial evidence amounts to 'more than a scintilla, but less than a preponderance.'" *Weis Mkts., Inc. v. NLRB*, 265 F.3d 239, 243 (4th Cir. 2001) (quoting *Pirelli Cable Corp. v. NLRB*, 141 F.3d 503, 514 (4th Cir. 1998)). *See also Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (holding that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). In conducting our review of a BRB decision, we are obliged to make an independent examination of the record, bearing in mind that "'a reviewing body may not set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis.'" *Doss v. Director, OWCP*, 53 F.3d 654, 659 (4th Cir. 1995) (quoting *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir. 1988)). In making this determination, we must ensure that the ALJ has adhered to her statutory duty "to analyze 'all of the relevant evi-

dence' and to provide a sufficient explanation for [her] 'rationale in crediting certain evidence.'" *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (quoting *Milburn Colliery Co.*, 138 F.3d at 528).

## III.

In order to succeed on a claim for Black Lung disability benefits, "a claimant must prove that (1) he has pneumoconiosis; (2) the pneumoconiosis arose out of his coal mine employment; (3) he has a totally disabling respiratory or pulmonary condition; and (4) pneumoconiosis is a contributing cause to his total respiratory disability." *Milburn Colliery Co.*, 138 F.3d at 529; *see also* 20 C.F.R. § 718.202-.204. In order to secure survivor's benefits, a surviving spouse must demonstrate, in addition to (1) and (2) above, that her decedent's death was "due to pneumoconiosis." *Id*. § 718.205(a). Under the applicable regulations, a miner's death "will be considered to be due to pneumoconiosis if . . . pneumoconiosis was a substantially contributing cause or factor leading to the miner's death . . . ." *Id*. § 718.205(c)(2). The regulations further explain that "[p]neumoconiosis is a 'substantially contributing cause' of a miner's death if it hastens the miner's death." *Id*. § 718.205(c)(5). In this proceeding, the parties do not dispute that Mr. Lilly suffered from pneumoconiosis or that his pneumoconiosis arose out of his coal mine employment. Instead, they disagree over whether Mr. Lilly's pneumoconiosis was a substantially contributing cause of his disability and death.

### A.

In determining whether there is substantial evidence of Mr. Lilly's disability and death due to pneumoconiosis, the ALJ was obliged to evaluate and choose between the conflicting medical opinions presented by two groups of physicians, one group supporting Mrs. Lilly's claims[2] and another group refuting them on behalf of Eastern.[3] When

---

[2]The medical opinions supporting Mrs. Lilly's claims were provided by three physicians, Dr. Rasmussen, Dr. Boustani, and Dr. Dy.

[3]The opinions refuting Mrs. Lilly's claims and relied on by Eastern were provided by eight physicians: Drs. Tuteur, Kleinerman, Renn, Fino, Lockey, Weiss, Ranavaya, and Zaldivar.

such disputes arise, an ALJ's judgment is restricted only by the rules that she must not base her determination on any impermissible grounds and that she must fully explain her rationale. *See Bill Branch Coal Corp.*, 213 F.3d at 190.

1.

Eastern first asserts that the ALJ based her determination on two impermissible grounds: (1) Dr. Rasmussen's status as treating physician; and (2) Dr. Dy's status as prosector of the autopsy. In this regard, Eastern correctly posits that "an ALJ should not 'mechanistically credit[ ], to the exclusion of all other testimony,' the testimony of an examining or treating physician solely because the doctor personally examined the claimant." *Milburn Colliery Co.*, 138 F.3d at 533 (quoting *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir. 1997)). At the same time, a treating physician's opinion is entitled to "great, though not necessarily dispositive, weight." *Grigg v. Director, OWCP*, 28 F.3d 416, 420 (4th Cir. 1994). Eastern is also correct that "ALJs are not to credit the opinions of an autopsy prosector, to the exclusion of all other experts, solely because the autopsy prosector was the only physician to examine the whole body near the time of death." *Bill Branch Coal Corp.*, 213 F.3d at 192. Like the BRB, however, we are satisfied that the ALJ did not mechanistically credit the opinions of Drs. Rasmussen and Dy, to the exclusion of all other evidence, based solely on their status. Instead, as explained below, her decisions provided a reasoned analysis of why she found these physicians' opinions credible.

Upon remand from the BRB, the ALJ explained that she credited the evidence of Dr. Rasmussen for several reasons: (1) he has extensive clinical experience treating coal miners; (2) he has published numerous articles on coal workers' pneumoconiosis; (3) his diagnosis was based on objective arterial blood gas studies performed by himself and others; and (4) his diagnosis was confirmed by the autopsy. ALJ Remand Decision at 6. The ALJ further explained that she credited Dr. Rasmussen's opinion because she found it well documented and well reasoned. *Id.* It was clearly within the ALJ's discretion to find, based on the foregoing, that Dr. Rasmussen was more credible than other physicians who, according to Eastern, possess superior academic qualifications.

The ALJ similarly offered sufficient explanation as to why she credited the evidence of Dr. Dy, the prosector of the autopsy. The ALJ carefully explained that she credited the prosector's opinion, not mechanistically based on his title alone, but because he listed specific observations that led him to conclude that Mr. Lilly's left lung contained moderate pneumoconiosis and his right contained mild pneumoconiosis. *Id.* at 3. In particular, Dr. Dy observed a macule measuring one centimeter, pleural interstitial fibrosis, and intra-alveolar anthracotic macrophages. *Id.* The ALJ was entitled to find that Dr. Dy's opinion was well supported because it was based on these direct observations. As explained below, the ALJ sufficiently justified her decision to discount the opinions of the physicians who expressed contrary views. The ALJ thus did not mechanistically credit the opinion of the prosector to the exclusion of all other experts. *See Bill Branch Coal Corp.*, 213 F.3d at 192.

2.

Eastern also maintains that the ALJ erred in according lesser weight to the opinions of physicians who expressed views contrary to those of Drs. Rasmussen and Dy. Because the ALJ explained her reasoning in that regard and did not rely on any impermissible bases, we must defer to her discretion and judgment in assessing the conflicts in the evidence. *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 342 (4th Cir. 1996).

First, the ALJ did not improperly discredit the opinion of Dr. Peter Tuteur. Dr. Tuteur reviewed certain of Mr. Lilly's medical reports, x-ray reports, and pulmonary function studies, and he concluded that Mr. Lilly did not present clinically, physiologically, or radiologically significant pneumoconiosis. The ALJ reasonably discounted Dr. Tuteur's opinion because he issued his report two years prior to Mr. Lilly's death. In that circumstance, it was not inappropriate for the ALJ to accord less weight to an opinion premised on incomplete information. The ALJ analyzed Dr. Tuteur's opinion and explained why she found it less than convincing. Nothing more is required of her. *See Milburn Colliery Co.*, 138 F.3d at 528.

The ALJ was also unconvinced by the opinions of Drs. Jerome Kleinerman, Joseph Renn, and Greg Fino because they failed to

explain to her satisfaction why they had characterized Mr. Lilly's pneumoconiosis as mild when Dr. Dy's autopsy report described it as moderate in the left lung. In addition, the ALJ explained that she credited Dr. Fino's opinion less because he did not examine the autopsy slides and because he is not a pathologist. She further explained that she discounted Dr. Renn's opinion because, upon diagnosing emphysema, he refused to consider whether pneumoconiosis also could have played some role in Mr. Lilly's death. None of these were improper bases for discounting a physician's opinion.

Eastern also complains that the ALJ erred in declining to credit the opinion of Dr. James Lockey, who opined that Mr. Lilly's pneumoconiosis was "not a materially contributing factor" in his death. As the ALJ explained, she accorded Dr. Lockey's opinion little weight because he did not discuss the role that pneumoconiosis played in Mr. Lilly's chronic lung disease and, more importantly, because Dr. Lockey did not define what he meant by "materially." ALJ Decision at 16. Contrary to Eastern's assertion, the ALJ did not premise her decision to disregard this evidence on impermissible grounds. She simply found Dr. Lockey's opinion to be of little assistance in making her determination because she did not know what Dr. Lockey meant by "materially." Under the regulations, Mr. Lilly's death was "due to pneumoconiosis" if pneumoconiosis hastened his death at all, 20 C.F.R. § 718.205(c)(2), (5), yet Dr. Lockey may have considered a mere hastening of death to be medically immaterial. Because Dr. Lockey did not explain what he meant by "materially," his opinion failed to aid the ALJ in her efforts to reach a legal conclusion; therefore, she did not err in disregarding it.

Next, Eastern asserts that the ALJ erred in discounting the opinion of oncologist Dr. Raymond Weiss. Dr. Weiss stated that the median life-span for a patient with lung cancer in Stage IV is seven months and that, because Mr. Lilly survived five months in that stage, his survival was within the expected range.[4] Dr. Weiss — who is not a pulmonologist[5] — concluded that Mr. Lilly's pneumoconiosis therefore

---

[4]According to Dr. Weiss, lung cancer reaches Stage IV when it spreads to the bones, brain, liver, lymph nodes, adrenal glands, or any other part of the body.

[5]Pulmonology is "the science concerned with the anatomy, physiology, and pathology of the lungs." *Dorland's Illustrated Medical Dictionary* 1386 (28th ed. 1994).

could not have hastened his death. The ALJ accorded little weight to Dr. Weiss's testimony because he did not address the vital issue in the case: whether pneumoconiosis was a factor in the lung impairment that led to Mr. Lilly's death. There was nothing improper in the ALJ disregarding an expert's opinion that did not address the important issues in the case. More important, though, Dr. Weiss's testimony should be disregarded for another reason: it suffers from a serious logical flaw. Although Mr. Lilly's life-span was as expected for a man with Stage IV lung cancer, he may have lived longer had he not suffered from pneumoconiosis. Dr. Weiss failed to recognize and address this possibility; therefore, the ALJ properly disregarded his opinion.

The ALJ was also correct in giving no weight to the opinion of Dr. Mohammed Ranavaya, who simply placed the word "No" on a form asking whether pneumoconiosis was a substantially contributing cause of Mr. Lilly's death. The ALJ did not err in according Dr. Ranavaya's opinion little weight because he provided no rationale or support for it. *See Milburn Colliery Co.*, 138 F.3d at 532 n.9 (noting that "[a]n ALJ has discretion to disregard an opinion unsupported by a sufficient rationale").

Finally, Eastern complains that the ALJ improperly discredited the evidence of Dr. George Zaldivar because she found that he expressed no opinion on the extent of Mr. Lilly's respiratory impairment. Eastern is correct that the ALJ's characterization of Dr. Zaldivar's report was inaccurate, as Dr. Zaldivar found that "[f]rom a pulmonary standpoint Mr. Lilly is not capable of performing his usual coal mining work. He would not be capable of performing more than light work on a continuous basis." Despite this apparent oversight, our decision in this proceeding remains unchanged. The ALJ analyzed Dr. Zaldivar's report only in the context of her discussion of whether Mr. Lilly was totally disabled, an issue on which the physicians largely agreed. She did not purport to credit or discredit Dr. Zaldivar's opinion on other issues based on this assessment. We must therefore conclude that this isolated mischaracterization does not warrant the relief Eastern seeks.

B.

Having determined that the ALJ's methodology for interpreting the evidence was not improper, we turn to the issue of whether the award

of benefits to Mrs. Lilly by the BRB and the ALJ is supported by substantial evidence. *See Milburn Colliery Co.*, 138 F.3d at 528. In reviewing for substantial evidence, we are mindful that mechanically tallying the number of physicians on each side is improper. *Sterling Smokeless Coal Co.*, 131 F.3d at 440. Additionally, we do not substitute our judgment for that of an ALJ, even if we might have reached the opposite result. *Doss*, 53 F.3d at 659.

Our review of the physicians' reports and testimony convinces us that the ALJ's award of benefits is supported by substantial evidence. Dr. Rasmussen found that Mr. Lilly was totally disabled due to chronic lung disease, which was caused in part by pneumoconiosis. Dr. Rasmussen offered concrete, specific reasons for this conclusion: (1) a chest x-ray indicated pneumoconiosis, which was confirmed by the autopsy; and (2) Mr. Lilly's gas exchange impairment was much greater than his ventilatory capacity impairment.

Similarly, Dr. Rasmussen affirmatively concluded that coal dust exposure contributed to Mr. Lilly's death because coal dust produces emphysema and interstitial fibrosis. Dr. Rasmussen's report reflects that cigarette smoking and coal dust were both risk factors, but that the latter was "at least a major and probably the most significant cause of his lung disease." Dr. Rasmussen reached this conclusion because Mr. Lilly's gas exchange impairment was much greater than his ventilatory capacity impairment, which suggested significant interstitial lung disease. According to Dr. Rasmussen, this lung disease made Mr. Lilly more susceptible to and less capable of surviving the pneumonia that eventually killed him.

Certainly, Eastern submitted evidence supporting the proposition that Mr. Lilly's blood gas studies did not indicate impairment caused by pneumoconiosis. As discussed above, however, the ALJ permissibly found Dr. Rasmussen to be more credible. And Dr. Rasmussen's diagnosis was not premised on mere conjecture; it was supported by specific reasoning and interpretation of blood tests. His opinion, therefore, was appropriately considered as evidence supporting the award of benefits.

Dr. Rasmussen's opinion is buttressed by that of Dr. Maria Boustani, who also treated Mr. Lilly. Dr. Boustani found that both

tobacco smoke and coal dust contributed in an unknown ratio to Mr. Lilly's impairment. She reached this conclusion because, significantly, Mr. Lilly's smoking history and the amount of emphysema in his lungs were insufficient to explain the degree of impairment he exhibited. Dr. Boustani thus concluded that pneumoconiosis contributed to Mr. Lilly's death.

Finally, Dr. Dy's autopsy confirmed the presence of macroscopic pneumoconiosis in Mr. Lilly's lungs. In fact, Mr. Lilly's lungs probably once contained even more pneumoconiosis than Dr. Dy discovered because pneumoconiosis, according to Dr. Kleinerman, would more likely have been present in the portion of Mr. Lilly's right lung that had been removed.

In light of the foregoing, Mrs. Lilly presented such evidence as was necessary to convince a reasonable mind that pneumoconiosis was a substantially contributing cause of Mr. Lilly's death and disability. *See Consol. Edison Co.*, 305 U.S. at 229; 20 C.F.R. § 718.205(c)(2). Drs. Rasmussen and Boustani offered definitive testimony that, in their considered medical opinions, Mr. Lilly's pneumoconiosis contributed to his disability and death. Although certain other physicians opined that coal dust does not cause emphysema, and some stated that it causes a type of emphysema distinguishable from that caused by tobacco smoke, it is for the ALJ to determine which of the conflicting medical opinions are to be credited. *Stiltner*, 86 F.3d at 342. Because the ALJ did not improperly credit or discredit the physicians' opinions, and because her decision is supported by substantial evidence, the award of Black Lung disability and survivor benefits to Mrs. Lilly is not to be disturbed.

IV.

Pursuant to the foregoing, we deny Eastern's petition for review.

*PETITION FOR REVIEW DENIED*