UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

BUDE JARVIS,

*Petitioner,*

v.

CARBON FUEL COMPANY; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

*Respondents.*

No. 02-1061

On Petition for Review of an Order
of the Benefits Review Board.
(01-171-BLA)

Argued: September 25, 2002

Decided: October 7, 2003

Before WIDENER, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Timothy Francis Cogan, CASSIDY, MYERS, COGAN, VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Petitioner. Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for Respondents. **ON BRIEF:** Kathy L. Snyder, JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for Respondent Carbon Fuel.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Bude Jarvis, a coal miner, appeals the Decision and Order of the Benefits Review Board (Board) affirming the decision of an Administrative Law Judge (ALJ) to deny Jarvis benefits on a claim filed pursuant to the provisions of the Black Lung Benefits Act (the Act), as amended, 30 U.S.C.A. §§ 901-45 (West 1986 & Supp. 2003). *See Jarvis v. Carbon Fuel Co.*, BRB No. 01-0171 BLA (Nov. 19, 2001) (J.A. at 571-84). Because the factual findings of the ALJ were supported by substantial evidence, and the legal conclusions of both the ALJ and the Board were consistent with applicable law, we affirm.

I.

Jarvis worked as a coal miner for 32 years. In 1978, Jarvis was refused employment because he had pneumoconiosis. He filed his first claim for black lung benefits[1] on March 13, 1979, which was denied because he was not totally disabled. He filed a request for modification of this decision, which also was denied. Jarvis appealed the ALJ's decision to the Board, which affirmed, and then appealed the Board's decision to this court, which likewise affirmed. *See Jarvis v. Carbon Fuel Co.*, 23 F.3d 401 (4th Cir. 1994) (unpublished).

In July 1996, Jarvis filed a new claim. Because of the denial of his earlier claim, the 1996 claim was subject to the "duplicate claims"

---

[1]Under the Act, claimants are awarded benefits on a showing that they have either been rendered totally disabled due to pneumoconiosis or are the survivors of persons whose death was caused by pneumoconiosis. 20 C.F.R. § 718.1(a) (2003). Under federal regulation, pneumoconiosis (commonly known as black lung) is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a) (2003).

regulation, which provides, in relevant part, as follows: "If the earlier . . . claim has been finally denied, the later claim shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions[.]" 20 C.F.R. § 725.309(d) (1996). Therefore, because Jarvis's earlier claim was denied for failure to show total disability, the later claim was subject to denial unless Jarvis could show that he was totally disabled. Section 718.204 provides that a miner can show total disability by invoking the irrebuttable presumption under 20 C.F.R. § 718.304 (2003),[2] or producing any of the following evidence: (1) pulmonary

---

[2]Section 718.304 states:

There is an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis, that a miner's death was due to pneumoconiosis or that a miner was totally disabled due to pneumoconiosis at the time of death, if such miner is suffering or suffered from a chronic dust disease of the lung which:

(a) When diagnosed by chest X-ray (see § 718.202 concerning the standards for X-rays and the effect of interpretations of X-rays by physicians) yields one or more large opacities (greater than 1 centimeter in diameter) and would be classified in Category A, B, or C in:

(1) The ILO-U/C International Classification of Radiographs of the Pneumoconioses, 1971, or subsequent revisions thereto; or

(2) The International Classification of the Radiographs of the Pneumoconioses of the International Labour Office, Extended Classification (1968)(which may be referred to as the "ILO Classification (1968)"); or

(3) The Classification of the Pneumoconioses of the Union Internationale Contra Cancer/Cincinnati (1968)(which may be referred to as the "UICC/Cincinnati (1968) Classification"); or

(b) When diagnosed by biopsy or autopsy, yields massive lesions in the lung; or

(c) When diagnosed by means other than those specified in paragraphs (a) and (b) of this section, would be a condition which could reasonably be expected to yield the results described in paragraph (a) or (b) of this section had diagnosis been made as therein described: Provided, however, That any diagnosis made under this paragraph shall accord with acceptable medical procedures.

function tests showing qualifying values; (2) arterial blood-gas tests showing qualifying values; (3) the miner has pneumoconiosis and has been shown by medical evidence to be suffering from cor pulmonale with right sided congestive heart failure; or (4) the reasoned medical judgment of a physician based on acceptable techniques concluding that the miner cannot engage in coal mine work. *See* 20 C.F.R. § 718.204(b), (c) (2003).

The Department of Labor originally denied Jarvis's duplicate claim by notice dated January 15, 1997. At Jarvis's request, the case was then forwarded to ALJ Clement J. Kennington, who held a hearing on April 22, 1998. ALJ Kennington denied Jarvis's claim in a Decision and Order issued on August 5, 1998. ALJ Kennington reviewed the following medical evidence in rendering his decision: the readings of twenty-six chest x-rays taken from 1973 to 1997 and the qualifications of those examining physicians; ten pulmonary function studies taken between 1976 and 1997, which did not produce any qualifying values (*i.e.*, values equal to or less than those values provided in Appendix B of the Act); seven blood gas studies taken between 1976 and 1997, of which two from 1980 produced qualifying values (values equal to or less than those provided in Appendix C of the Act); and the reports of twelve physical examinations.[3]

Examining all this evidence together, ALJ Kennington found that there was conflict among the physicians as to whether there was additional evidence of complicated pneumoconiosis. In reviewing the

---

[3]Of the new evidence presented at this hearing, Jarvis offered: (1) two exhibits, which included the reading of Jarvis's 1997 x-ray by Dr. Edward Aycoth along with his curriculum vitae, and a 1998 medical report from treating physician Dr. Ward; and (2) medical reports, which included readings of Jarvis's chest x-rays by Drs. Paul S. Wheeler, William W. Scott, Jerome F. Wiot, Ralph T. Shipley, and Harold B. Spitz, along with curriculum vitae for each, pulmonary function studies performed by Dr. Robert Crisalli along with his curriculum vitae, and a report and deposition of Dr. George L. Zaldivar. The ALJ admitted as his own exhibits the medical summaries of each party. After the hearing, Carbon Fuel introduced two additional exhibits containing medical reports and x-ray readings by Drs. Wiot, Shipley, Wheeler, and Scott from the same 1997 chest x-ray reviewed by Dr. Aycoth (mentioned above).

qualifications of the various physicians, as is required by the law of this circuit, *see Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 440 (4th Cir. 1997), he found all of the physicians to be equally credible and stated that he found "no basis for according greater weight to the interpretations of either," and thus found the evidence to be "equally balanced." (J.A. at 359.) Accordingly, ALJ Kennington concluded that he was required to deny benefits because Jarvis had failed to prove by a preponderance of the evidence that he had complicated pneumoconiosis.

Following this decision, Jarvis filed an appeal with the Board. While that appeal was pending, he filed a request for modification with the district director. Consequently, the Board dismissed the appeal on August 25, 1999, and remanded the case to the district director for modification proceedings.

Pursuant to this order, a new hearing was held on July 26, 2000 before ALJ Daniel L. Leland. In addition to incorporating some of the evidence reviewed in the previous ALJ decision of August 5, 1998,[4] Jarvis presented new evidence consisting of the interpretations by various physicians of three new chest x-rays, a letter from Jarvis's treating physician, three new medical reports, and additional depositions of physicians. On September 28, 2000, ALJ Leland issued a Decision and Order denying the claim. In his decision, ALJ Leland first noted that Jarvis had not met any of the criteria in section 718.204(c) to establish a finding of total disability. Specifically, pulmonary function studies and blood gas tests produced non-qualifying values, there was

---

[4]As he explained in his decision, ALJ Leland did not incorporate all of the evidence reviewed in the previous hearing:

> Much of the evidence submitted by employer in this proceeding consists of interpretations of x-rays taken prior to the final denial of claimant's first claim on May 7, 1993. Because the instant claim is a duplicate claim in which claimant is initially required to show a material change in conditions since the denial of his first claim, these x-ray interpretations are not relevant to that issue and will therefore not be summarized in this opinion. *See* 20 C.F.R. § 725.309(d), *Lisa Lee Mines v. Director, OWCP*, 86 F.3d 1358 (4th Cir. 1996) (en banc).

(J.A. at 561 n.2.)

no evidence of cor pulmonale, and each of the examining physicians had determined that Jarvis had the respiratory capacity to perform his usual coal mine work. Next, ALJ Leland found that the conditions required to establish the irrebuttable presumption under section 718.304 were not met, because, although three physicians did interpret three different x-rays to show signs of complicated pneumoconiosis, numerous other physicians interpreted those same x-rays as showing only simple pneumoconiosis. In arriving at his conclusion, ALJ Leland remarked that the testimony of Dr. Deardorff, a physician who had testified before ALJ Kennington that a 1996 x-ray may show complicated pneumoconiosis, was "highly equivocal . . . and [Dr. Deardorff] basically gave [Jarvis] the benefit of the doubt." (J.A. at 564 n.3.) Thus, ALJ Leland accorded Dr. Deardorff's testimony little weight in making his determination of whether Jarvis had complicated pneumoconiosis.

Reviewing all of this evidence, ALJ Leland concluded that the preponderance of the x-ray evidence did not support a finding of complicated pneumoconiosis. ALJ Leland thus concluded that Jarvis had failed to demonstrate a material change in his condition, and declined Jarvis's request to modify ALJ Kennington's decision denying the claim.

Jarvis appealed the September 2000 decision to the Board. On November 19, 2001, the Board affirmed the decision of ALJ Leland denying benefits, finding it to be supported by substantial evidence.[5]

## II.

We review claims for benefits under the Act to determine whether substantial evidence supports the factual findings of the ALJ. *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000). "Substantial evidence consists of sufficient relevant evidence to con-

---

[5]As a preliminary matter, the Board noted that, before making a § 725.309 finding that there was no material change in condition, ALJ Leland should have addressed whether the evidence was sufficient to warrant modification pursuant to the standard set forth in 20 C.F.R. § 725.310. Although ALJ Leland failed to make this initial finding, the Board found this constituted harmless error. We agree.

vince a reasonable mind that the evidence is adequate to support a conclusion." *Scott v. Mason Coal Co.*, 289 F.3d 263, 267 (4th Cir. 2002); *see Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 528 (4th Cir. 1998) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Applying this standard, "we must affirm the Board if it properly determined that the ALJ's findings are supported by substantial evidence." *Doss v. Director, Office of Workers' Comp. Programs*, 53 F.3d 654, 659 (4th Cir. 1995). We review the ALJ's and the Board's conclusions of law *de novo*. *See Scott v. Mason Coal Co.*, 60 F.3d 1138, 1140 (4th Cir. 1995).

On appeal to this court, Jarvis argues that: (1) the Department of Labor did not properly provide Jarvis and his attorney with the entire record, thereby violating his due process rights, (2) the evidence that ALJ Leland and the Board credited in making their determinations was not reliable because proper weight was not accorded to the fact that the physicians rendered conflicting reports, (3) ALJ Leland merely "counted heads" in rendering his decision, (4) ALJ Leland erred in disregarding Dr. Deardorff's opinion as "highly equivocal" or equivocal, (5) Dr. Wiot's rationale regarding Jarvis's diagnosis is not worthy of weight, (6) ALJ Kennington erred in not following the presumption that legal pneumoconiosis is a progressive disease, (7) ALJ Kennington and ALJ Leland did not discharge their respective duties to prevent Carbon Fuel Company from submitting cumulative evidence, considering that Jarvis was unrepresented by counsel, (8) ALJ Kennington and ALJ Leland erred in relying upon evidence that the pulmonary function and blood gas tests were non-qualifying, because an inference of non-disability does not arise from these results, and (9) ALJ Leland erred in not considering the issue of hostility to the Act. We address each of these arguments in turn.

III.

The issues that Jarvis raises in this appeal deal principally with the manner in which the ALJs reviewed the evidence in the case. The exceptions are his contention that the Board deprived him of due process when it considered his case and his claim that ALJ Kennington and ALJ Leland erroneously admitted cumulative evidence. We will consider these issues before turning to the bulk of his argument.

Jarvis first contends that the Board deprived him of a fair opportunity to be heard by failing to provide him with copies of parts of the administrative record, despite his requests. The reason Jarvis did not have copies of parts of the evidentiary record is unclear, but the record clearly indicates that the Board, upon learning that Jarvis did not have certain information, made a concerted effort both to ensure that Jarvis had access to any missing information and to allow Jarvis extra time to review those parts of the record missing from his files. The full interaction between the Board and Jarvis on this issue is recounted in the Board's decision. Jarvis does not dispute the Board's characterization of events, and it need not be repeated here, except to note that the Board explicitly offered to provide Jarvis a complete copy of the record, an offer that Jarvis declined to accept. Thus, in addition to the multiple accommodations described in the Board's decision, the Board provided Jarvis with full access to the record and accordingly granted him a full and fair opportunity to be heard.

In addition, Jarvis claims that ALJ Kennington and ALJ Leland did not discharge their respective duties to prevent Carbon Fuel from submitting allegedly cumulative evidence, considering that Jarvis was unrepresented by counsel. We find this contention without merit and hold that the ALJ properly discharged his duties. We review the question of whether allegedly cumulative evidence should have been allowed in the record for abuse of discretion. *See Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 949 (4th Cir. 1997) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 424 (4th Cir. 1996); *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 111 (4th Cir. 1995)). In *Underwood*, we stated that, with respect to cumulative evidence, its inclusion should not constitute prejudicial error "when it increases confidence in the outcome of the proceedings." *Underwood*, 105 F.3d at 951. Here, both ALJ Kennington and ALJ Leland acted within the scope of their discretion in admitting the evidence considered in this case. The evidence alleged by Jarvis to be cumulative is not unduly repetitious and each item has independent value that would warrant its admission. For example, Jarvis claims in his brief that the eight letters submitted by Dr. Wiot were cumulative. While each of the letters was written by the same doctor and came to a similar conclusion, each letter related to an interpretation of a different x-ray. Each interpretation had independent value for the ALJ to consider in rendering his opinion. The other evidence alleged to be cumulative likewise has inde-

pendent significance. Therefore, we find that neither ALJ Kennington nor ALJ Leland abused his discretion in admitting the evidence in this case.

Jarvis also raises numerous arguments touching on the merits of his case. First, Jarvis contends that the ALJ did not analyze the evidence properly in light of the fact that the witnesses for Carbon Fuel read the same x-rays differently on different occasions. More specifically, Jarvis contends that the interpretations of Drs. Scott, Shipley, Wiot, Spitz, Wheeler, and Abramowicz should not be accorded the weight given to them by the ALJ because of their inconsistencies. We disagree.

The record does indicate that, throughout this extensive case, these physicians, at times, have offered different interpretations *as to the degree of simple pneumoconiosis* on certain x-rays. But, as the Board noted, "[the physicians] did not alter their conclusions that [Jarvis's] x-rays did not reveal the presence of complicated pneumoconiosis." (J.A. at 579 n.15.) The fact that these physicians' interpretations varied slightly is not enough to discount their opinions entirely. Thus, the ALJ's reliance on these opinions was not inappropriate.

Jarvis further contends that more weight should have been given to Drs. Aycoth and Francke, because their interpretations were entirely consistent in their finding of complicated pneumoconiosis. While Jarvis is correct in noting that these physicians' interpretations remained consistent over time, he ignores the fact that the ALJ gave due consideration to their interpretations and medical assessments in rendering his decision. Whatever added probative value can be attributed to the consistency of these physicians' opinions, the ALJ did not err in concluding that those opinions were insufficient to overcome the competing evidence from the other equally qualified physicians who found evidence of only simple pneumoconiosis.[6] We find the ALJ's decision

---

[6]In addition to Drs. Aycoth and Franke, Jarvis lists the consistent interpretations of other physicians. These consistent interpretations finding complicated pneumoconiosis were readings taken prior to 1993, and therefore, were considered in Jarvis's first claim for benefits, which was denied. Because we must accept as true the factual predicate behind the

was supported by substantial evidence and affirm the Board's conclusion regarding the ALJ's analysis of the physicians' interpretations.

Next, Jarvis contends that the ALJ merely "counted heads" in evaluating the physicians' competing opinions, which is contrary to the ALJ's obligation to consider all relevant evidence. *See Sterling Smokeless Coal*, 131 F.3d at 440-41; *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 210 n.7 (4th Cir. 2000). In *Sterling Smokeless Coal*, we established that "an ALJ may not ignore the relative qualifications of competing physicians in conducting its review." *Sterling Smokeless Coal*, 131 F.3d at 440. This is not to say, however, that any time a greater number of physicians support one party's position, the ALJ's decision necessarily is based on a numeric count if the ALJ rules in that party's favor. Rather, the conflicting opinions of two (or more) physicians should be resolved, to the extent possible, by considering "all of the relevant evidence bearing upon the existence of pneumoconiosis." *See Sterling Smokeless Coal*, 131 F.3d at 441-42.

The ALJ did exactly as required in evaluating the conflicting opinions here. The ALJ examined and cited the qualifications and expertise of each physician, in addition to evaluating the various interpretations that each one rendered. After a full examination of all of these factors, the ALJ determined that while each of the physicians were credible and qualified, the preponderance of the evidence did not support a finding of complicated pneumoconiosis. Therefore, we affirm the Board's finding that the ALJ "clearly considered the radiological qualifications of the respective readers." (J.A. at 579 n.15.)

In addition, Jarvis argues that ALJ Leland erred in disregarding Dr. Deardorff's testimony as "highly equivocal."[7] This argument, too,

---

initial denial of benefits, we must accept that Jarvis did not have complicated pneumoconiosis in 1993. Accordingly, the readings taken prior to 1993 are irrelevant in this determination, which concerns solely whether Jarvis's condition has changed since 1993. *See Lisa Lee Mines v. Director, Office of Workers' Comp. Programs*, 86 F.3d 1358, 1362 (4th Cir. 1996) (en banc).

[7]In the September 28, 2000 opinion, the ALJ stated regarding Dr. Deardorff's testimony,

must fail. It is the duty of the ALJ to make factual findings, a duty which includes "evaluating the credibility of witnesses and weighing contradicting evidence." *Doss v. Dir., Office of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir. 1995) (citing *United States Steel Corp. v. Bridges*, 582 F.2d 7 (5th Cir. 1978)). There is certainly substantial evidence to support the ALJ's finding that Dr. Deardorff's testimony was equivocal.[8] *Cf. Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 763 (4th Cir. 1999) (finding that doctor's opinion was not "too equivocal as a matter of law" because opinion expressed only the "uncertainty inherent in medical opinions").

Next, Jarvis contends that the eight medical reasons that Dr. Wiot offered as to why Jarvis does not have complicated pneumoconiosis are unreliable. We find that this assertion is also without merit. First, Dr. Wiot was one of many physicians who offered evidence in this case, and many of the others came to a similar conclusion regarding Jarvis's x-rays. Also, there is no suggestion in the record that the ALJ did not examine thoroughly Dr. Wiot's qualifications and the methods through which he developed his interpretations. Other than mere references in Jarvis's brief to alternate medical opinions regarding the reading of x-rays, there is no indication that Dr. Wiot's testimony

---

> Dr. Deardorff testified at the hearing before Judge Kennington that the August 21, 1996 x-ray may show complicated pneumoconiosis, but his testimony was highly equivocal as to whether the lesions he viewed represented complicated pneumoconiosis or histoplasmosis and he basically gave claimant the benefit of the doubt. Because of the equivocal nature of Dr. Deardorff's testimony, I accord it little weight as to whether the miner's recent chest x-rays show complicated pneumoconiosis.

(J.A. at 564 n.3.)

[8]Respecting his underlying conclusions, Dr. Deardorff testified that "there is a reasonable doubt as to whether this is a granuloma versus a complicated A-type opacity in the lungs." (J.A. at 222.) Also, in reviewing specific aspects of the various x-rays, Dr. Deardorff expressed some doubt as to whether certain irregularities were qualifying opacities. (*See e.g.*, J.A. at 228 ("That's a lesion. That's in question as to whether it's a granuloma or a complicated scar of pneumoconiosis.").)

should be discounted as unreliable. We find that the ALJ did not err in giving some weight to Dr. Wiot's testimony.

Additionally, Jarvis argues that ALJ Kennington[9] erred in not following the presumption that legal pneumoconiosis is progressive. We find that this contention lacks merit. The Supreme Court has held that, because "pneumoconiosis is a progressive and irreversible disease[,] . . . where the more recent X-ray evidence is negative and directly conflicting with earlier positive X-rays it may be weighed with less regard to timing in light of the recognized principle that negative X-ray readings are not a trustworthy indicator of the absence of the disease." *Mullins Coal Co. v. Director, Office of Workers' Comp. Programs*, 484 U.S. 135, 151 (1987) (citation omitted). ALJ Kennington did not violate this legal principal in this instance. Contrary to Jarvis's contention, we believe that there was substantial evidence in the record to support the ALJ's finding, and can identify no instance where any physician claimed that the disease was regressive. Because there is no evidence in the record that the ALJ gave greater weight to later interpretations that were contrary to earlier ones, we find there was no error.

Jarvis also argues that the ALJ erred by inferring non-disability from evidence that the pulmonary function and blood gas tests were non-qualifying. Under section 718.204(b), a claimant can establish total respiratory or pulmonary disability, and thus entitlement to benefits, by presenting evidence of qualifying pulmonary function tests, qualifying arterial blood gas tests, cor pulmonale with right-sided congestive heart failure, and, if none of the previous can be shown, a reasoned physician's report concluding that the claimant's respiratory or pulmonary condition prevents him from engaging in employment. Thus, the ALJ, having already determined that Jarvis did not qualify for the presumption set forth in section 718.304, properly reviewed the results of the pulmonary function studies and blood-gas studies to determine whether Jarvis qualified for benefits under a different avenue. Jarvis would have us believe that the ALJ used this evidence to infer non-disability. This assertion cannot stand. There is

---

[9]In making this argument in his brief, Jarvis claims it was the "1995 ALJ" who was in error. Because this claim was filed in 1996, we will assume that Jarvis is referring to the first ALJ (Kennington) to consider his duplicate claim.

absolutely no indication that the ALJ inferred non-disability from this evidence. Rather, a host of evidence indicates that the ALJ's conclusion was well-founded: All of the newly submitted pulmonary function and arterial blood gas studies were non-qualifying and revealed normal lung function, no new medical opinions concluded that Jarvis suffered from a totally disabling respiratory or pulmonary impairment, and there was no new evidence of cor pulmonale with right-sided congestive heart failure. There was substantial evidence to support the ALJ decision that the newly submitted evidence was insufficient to establish total disability, and we find no evidence in the record that the ALJ made any improper inferences from the non-qualifying results of those tests.

Finally, Jarvis asserts that the ALJ did not consider whether the physicians testifying on behalf of Carbon Fuel should have been discredited based on their hostility to the Act. Like Jarvis's other claims, this too is without merit. We have held that "a physician's opinion may be discredited when the physician bases his or her conclusion on a premise fundamentally at odds with the statutory and regulatory scheme." *Lane v. Union Carbide Corp.*, 105 F.3d 166, 173 (4th Cir. 1997) (internal quotation marks omitted). Here, Jarvis claims that Dr. Zaldivar is hostile to the Act because in 2000 he found that Jarvis had no pulmonary impairment, which was contrary to a portion of one of his previous reports, in which he noted that another physician's 1997 measurement of Jarvis's diffusing capacity was not normal; thus, Jarvis contends, Dr. Zaldivar is hostile to the Act because he never reconciled these inconsistencies. This court has never held that an unexplained inconsistency in an opinion implies bias or hostility towards the Act. Rather, a physician would have had to base his opinion on an assumption that was in direct conflict with the regulations. Because we find no evidence that Dr. Zaldivar, or any of the other physicians, based their testimony on erroneous assumptions, we do not believe that the ALJ erred in not considering the issue of hostility.

After careful review, we conclude that there was substantial evidence to support the factual findings of the ALJ, and that the legal conclusions of the Board and the ALJ are rational and consistent with applicable law. Accordingly, we affirm the decision of the Board.

*AFFIRMED*